**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN CARLOS VARGAS-HERNANDEZ,
*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 04-73343

Agency No.
A92-434-343

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 4, 2007—Pasadena, California

Filed August 3, 2007

Before: Cynthia Holcomb Hall and Consuelo M. Callahan,
Circuit Judges, and James L. Robart,* District Judge.

Opinion by Judge Callahan

---

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

**COUNSEL**

Louis A. Gordon (argued), Gordon Law Offices, Los Angeles, California, and Vera Weisz, Law Office of Vera A. Weisz, Los Angeles, California, for the petitioner.

Jennifer Paisner (argued), Assistant Attorney General Peter D. Keisler, Senior Litigation Counsel Julia Doig Wilcox, and Melissa Neiman-Kelting, Office of Immigration Litigation, Washington, D.C., for the respondent.

---

**OPINION**

CALLAHAN, Circuit Judge:

Petitioner Juan Carlos Vargas-Hernandez ("Vargas") petitions for review from the Board of Immigration Appeals' ("BIA") dismissal of his appeal from the immigration judge's ("IJ") order of removal. The BIA rejected Vargas' attempt to remand his case so that he could apply for adjustment of status, and concluded that Vargas failed to make a heightened showing to justify discretionary relief under former Immigration and Nationality Act ("INA") § 212(c), formerly codified at 8 U.S.C. § 1182(c). The BIA also found that the record did not show that the IJ was biased against him to the extent that she denied him due process. We dismiss the petition concerning the treatment of Vargas' juvenile conviction, and deny the petition regarding Vargas' due process claims.

**FACTUAL BACKGROUND**

Vargas is a native and citizen of Mexico who became a lawful permanent resident on September 3, 1989. In 1990, Vargas was prosecuted as an adult for murder and attempted murder. On February 4, 1991, he pleaded guilty to one count of voluntary manslaughter and was sentenced to one year in

jail on a suspended sentence of eleven (11) years. At the time, Vargas was approximately sixteen (16) years old. Vargas was also convicted of misdemeanor vandalism in 1996.

## PROCEDURAL HISTORY

The Immigration and Naturalization Service ("INS") began removal proceedings against Vargas in 2002, alleging that he had been convicted of voluntary manslaughter, an aggravated felony. On July 30, 2002, the IJ sustained the charge of removability against Vargas, and Vargas requested § 212(c) relief.[1] At the beginning of the final hearing on February 12, 2003, Vargas filed a motion to continue to request an opportunity to file for an adjustment of status as the husband of a United States citizen.[2] The IJ denied § 212(c) relief on February 12, 2003, and ordered Vargas deported.

Vargas' wife Sandra filed a petition for alien relative (I-130) on March 9, 2003. Vargas filed his appeal from the IJ's removal order on August 4, 2003, after receiving an extension of time. Vargas attached an undated application to register for permanent residence or adjust status to his February 9, 2004 motion to remand the removal proceedings for adjustment of status. The BIA denied the motion to remand and dismissed Vargas' appeal, concluding that the IJ appropriately denied discretionary relief under § 212(c), that Vargas had not shown good cause for any further continuances, and that Vargas failed to demonstrate bias by the IJ.

---

[1]Congress repealed INA § 212(c) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The Supreme Court ruled in *INS v. St. Cyr*, 533 U.S. 289, 326 (2001), however, that aliens who pleaded guilty to crimes prior to the repeal of § 212(c) could still apply for relief

[2]Vargas' wife, Sandra Gradilla Salazar, naturalized on April 1, 1998. Vargas married Ms. Salazar on July 4, 1996.

## STANDARD OF REVIEW

We have jurisdiction over petitions for review that raise colorable constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D). This court lacks jurisdiction to review certain orders of removal against criminal aliens. 8 U.S.C. § 1252(a)(2)(C). Questions of law, including due process claims, are reviewed de novo. *Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587 (9th Cir. 2005); *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000). Our review is limited to the BIA's decision and the grounds for the final order of removal affirmed by the BIA. *Kelava v. Gonzales*, 434 F.3d 1120, 1123 (9th Cir. 2004).

## DISCUSSION

## I.

Vargas argues that because he was sixteen (16) years old when he committed the offense that led to his 1991 voluntary manslaughter conviction, his conviction qualified for treatment under the Federal Juvenile Delinquency Act ("FJDA"), and should not be used as a conviction in the removal proceedings.[3] Although the BIA did not address this argument when it affirmed the IJ's decision and denial of § 212(c) relief, the DHS argues before this court that because Vargas was prosecuted by California as an adult, his conviction cannot qualify for treatment as a juvenile adjudication.

[1] The term "conviction" for the purposes of the INA is defined as follows:

---

[3]The BIA has consistently held that "juvenile delinquency proceedings are not criminal proceedings, that acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes." *In re Devison-Charles*, 22 I. & N. Dec. 1362, 1365 (BIA 2000). "[T]he standards established by Congress, as embodied in the FJDA, govern whether an offense is to be considered an act of delinquency or a crime." *Id.*

(48)(A) The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

INA § 101(a)(48)(A) codified at 8 U.S.C. § 1101(a)(48)(A). Congress specifically added this definition to the INA in 1996 to clarify that all that is necessary for a conviction is an admission or finding of guilt and a punishment imposed. *See Uritsky v. Gonzales*, 399 F.3d 728, 732-33 (6th Cir. 2005) (discussing legislative history of § 1101(a)(48)).

**[2]** In *Morasch v. INS*, 363 F.2d 30, 31 (9th Cir. 1966), this court noted that the statute permitting deportation upon conviction of two crimes of moral turpitude did not allow for differentiation by age at the time of offense. Although Oregon could have treated the alien as a juvenile offender, it chose to treat him as an adult. *Id*. This court refused to reclassify the alien's adult conviction as a juvenile adjudication, concluding that "the Service was entitled to take the record as it found it, and neither it nor we are required to import separate juvenile proceedings which were not used by the Oregon court." *Id*.

**[3]** In *Vieira-Garcia v. INS*, 239 F.3d 409, 412-14 (1st Cir. 2001), the First Circuit interpreted INA § 101(a)(48)(A) and rejected a petitioner's argument that, although he was tried as an adult by Rhode Island, the FJDA should apply. The First Circuit noted that § 101(a)(48)(A) is clear and unambiguous, and the fact that the petitioner pleaded guilty and a judge

ordered him imprisoned meant that the petitioner had a "conviction" under the statute. *Id.* at 413. In rejecting the petitioner's argument, the First Circuit concluded that "[n]either we nor the BIA have jurisdiction to determine how a state court should adjudicate its defendants. Once adjudicated by the state court, as either a juvenile or an adult, we are bound by that determination." *Id.* The First Circuit also rejected an equal protection challenge to the BIA's reliance on the state's choice of how to handle the minor alien's criminal case, concluding that reliance on the state's prosecutorial choice had a rational basis. *Id.* at 414-15.

**[4]** Applying *Morasch* and *Vieira-Garcia* to this case, Vargas' 1991 conviction for voluntary manslaughter constitutes a conviction under INA § 101(a)(48)(A).[4] Vargas pleaded guilty, and a judge sentenced him to eleven (11) years in prison, suspended, and 365 days' imprisonment. There is no evidence he was ever adjudged a juvenile delinquent. In addition, the state court's decision to try Vargas as an adult had a rational basis and did not violate the equal protection clause. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25-28 (1989) (concluding age classification is analyzed under rational basis); *Toomey v. Clark*, 876 F.2d 1433, 1439-40 (9th Cir. 1989) (applying rational basis test to juvenile court's decision to decline jurisdiction). Therefore, the voluntary manslaughter conviction was properly used to find Vargas removable under INA § 237(a)(2)(A)(iii) for having been convicted of an aggravated felony. Accordingly, because we conclude that Vargas' adult conviction was an aggravated felony conviction, we dismiss Vargas' petition on these claims for lack of jurisdiction under 8 U.S.C. § 1252(a)(2)(C).

---

[4]To the extent that Vargas argues that his voluntary manslaughter conviction fits under the juvenile exception to crimes involving moral turpitude under INA § 212(a)(2)(A)(ii), that section does not apply because the IJ did not find him excludable on those grounds. The IJ specifically sustained the charge that Vargas was convicted of an aggravated felony, making him removable under INA § 237(a)(2)(A)(iii).

## II.

### A.

**[5]** Vargas argues that the IJ should have granted him a continuance so he could apply for an adjustment of status. The denial of a motion for continuance is reviewed for an abuse of discretion. *Nakamoto v. Ashcroft*, 363 F.3d 874, 883 n.6 (9th Cir. 2004). Discretionary decisions, including whether or not to grant § 212(c) relief, are not reviewable. 8 U.S.C. § 1252(a)(2)(B)(ii). Abuse of discretion challenges to discretionary decisions, even if recast as due process claims, do not constitute colorable constitutional claims. *See Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001).

**[6]** The IJ did not abuse her discretion in this case. Although Vargas married his wife in 1996, and his wife naturalized in 1998, Vargas waited until the fifth hearing in February 2003 to attempt to adjust his status. The IJ specifically noted that Vargas could have filed an I-130 petition well before the final hearing and that the first hearing was in July 2002. Without any explanation for the delay in filing his motion for a continuance, we cannot conclude that the IJ abused her discretion in denying the last minute continuance.

### B.

**[7]** Vargas also challenges the BIA's denial of his motion to remand, which we review for an abuse of discretion. *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003). "The BIA or the IJ decides whether an applicant is entitled to a favorable exercise of agency discretion on a case by case basis by 'taking into account the social and humane considerations presented in the applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident.' " *Rashtabadi v. INS*, 23 F.3d 1562, 1570 (9th Cir. 1994) (quoting *Yepes-Prado v. INS*, 10 F.3d 1363, 1365-66 (9th Cir. 1993)). "Where an alien has commit-

ted a particularly grave criminal offense, he may be required to make a heightened showing that his case presents unusual or outstanding equities." *Id.*

[8] In Vargas' case, the BIA noted that even if he was eligible for an adjustment of status, it would not grant a remand because he failed to demonstrate that he was worthy of a favorable exercise of discretion. In analyzing whether to grant relief under INA § 212(c) the IJ specifically considered Vargas' time in the United States, his family ties to the United States, and his mother's health, but concluded that these equities were outweighed by the seriousness of Vargas' voluntary manslaughter conviction and his other arrests and vandalism conviction.[5] Thus, the record shows that the IJ and the BIA properly considered all relevant factors and articulated their reasons for weighing the equities and denying relief. *See Kalubi v. Ashcroft*, 364 F.3d 1134, 1139 (9th Cir. 2004) (noting that "[t]here is no definitive list of factors that the BIA must consider or may not consider" and stating that the reasons for the exercise of discretion depends on the evidence); *Shooshtary v. INS*, 39 F.3d 1049, 1051 (9th Cir. 1994) (stating that "[a]lthough we require the Board to state its reasons and properly consider all factors, the preciseness we require of the Board depends upon the preciseness of the proof offered by the petitioner."). Vargas has not met his burden of demonstrating that, even if he was eligible for adjustment of status, he was entitled to a discretionary grant of relief.[6] *See INS v.*

---

[5]The equities in an INA § 212(c) analysis is similar to that for adjustment of status, and the two procedures may be combined. *See In re Azurin*, 23 I. & N. Dec. 695, 697-98 (BIA 2005) ("[W]e had approved the practice of combining a section 212(c) waiver with an adjustment application before the language regarding 212(c) was inserted into former 8 C.F.R. § 245.1(e)."); *In re Mendez-Moralez*, 21 I. & N. Dec. 296, 299-300 (BIA 1996) (noting exercise of discretion is a case by case balancing for all forms of discretionary relief).

[6]Vargas' eligibility for adjustment of status is doubtful because the IJ found that he did not show extreme hardship to justify a waiver under 8 U.S.C. § 1182(h)(1)(B) (INA § 212(h)(1)(B)). *See Shooshtary*, 39 F.3d at 1051 (discussing need to show hardship to justify a waiver under § 1182(h)(1)(B) if inadmissible after a criminal conviction but married to a lawful permanent resident).

*Abudu*, 485 U.S. 94, 105 (1988) (concluding that the BIA may simply determine that the alien would not be entitled to the discretionary grant of relief). We conclude that the BIA did not abuse its discretion in denying Vargas' motion for a remand to apply for adjustment of status.

## C.

**[9]** In addition, Vargas has not shown prejudice from the denial of his motion to remand. Even if Vargas were eligible for an adjustment of status, the IJ would have denied him discretionary adjustment of status. The IJ and the BIA were entitled to consider Vargas' criminal conviction in connection with an application for discretionary relief or adjustment of status. *Paredes-Urrestarazu*, 36 F.3d 801, 808-10 (9th Cir. 1994) (concluding that a criminal conviction may be considered when exercising discretion under section 212(c) even if the conviction was expunged under state law); *Delgado-Chavez v. INS*, 765 F.2d 868, 869 (9th Cir. 1985) ("[C]onvictions may not render an alien statutorily ineligible for voluntary departure. Rather, a conviction may be considered as an adverse factor in deciding whether the favorable exercise of discretion is warranted."). Because "[d]etermining whether section 212(c) relief should be awarded involves the same type of balancing of equities the Board must undertake in the discretionary determinations considered in the adjustment of status and voluntary departure contexts," Vargas cannot show that the IJ would have come to a different result on his application for an adjustment of status. *Paredes-Urrestarazu*, 36 F.3d at 810. Therefore, the BIA's denial of a remand to consider his application for adjustment of status was not an abuse of discretion.

## III.

Finally, Vargas argues that the IJ should have granted his motion for recusal after the IJ exchanged words with Vargas' attorney and offered to recuse herself. On appeal, the BIA

reviewed the record de novo and concluded that there was no evidence that the IJ prejudged Vargas' case or that the IJ's denial of the recusal motion rendered the proceedings unfair.

A.

**[10]** The BIA has concluded that "motions for recusal are governed by . . . the constitutional due process requirement that the hearing be before a fair and impartial arbiter." *Matter of Exame*, 18 I. & N. Dec. 303, 306 (BIA 1982). The BIA summarized the constitutional fairness inquiry as follows:

> [A]n applicant is not denied a fair hearing merely because the immigration judge has a point of view about a question of law or policy . . . . As a general rule, in order to warrant a finding that an immigration judge is disqualified from hearing a case it must be demonstrated that the immigration judge had a personal, rather than judicial, bias stemming from an "extrajudicial" source which resulted in an opinion on the merits on some basis other than what the immigration judge learned from his participation in the case. An exception to the general rule that bias must stem from an "extrajudicial" source may arise where "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." *Davis v. Bd. of School Comm'rs*, 517 F.2d 1044 (5th Cir. 1975).

*Id*. The Supreme Court adopted a similar standard for deciding whether to recuse judges, stating "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

In this case, Vargas' allegations of bias stem from a single exchange between the IJ and Vargas' counsel. The exchange at issue went as follows:

Q:   Do you have any other items of evidence?

A:   Yes, Your Honor.

Q:   Okay. Do you have the recent DOJ?

A:   No, Your Honor.

Q:   Ms. Weisz, isn't it is [sic] his burden?

A:   Your Honor, it is his burden. I think the last time that we had a hearing was not that long ago, and very frankly, I've had two months of Hell. My daughter's been very ill. She's been hospitalized also.

Q:   Ms. Weisz, you don't need to tell me about sick children.

A:   I'm sorry, Your Honor.

Q:   I could write volumes on it.

A:   I know that you could. That's why I thought you would have some empathy there.

Q:   I'm not asking you —

A:   I'm just telling you, Judge. Okay. Because you have such an attitude about this case, which is just unbelievable.

Q:   You know what? If you have a problem, ask me to recuse myself. I'd be more than glad to.

A: Please recuse yourself, Your Honor.

Q: I will.

The IJ then went off the record, and upon returning, the IJ asked Vargas' counsel to make a formal recusal motion. Vargas' counsel stated the following grounds for recusal:

A: Your Honor, I don't know, since the beginning of this case that we've appeared before you, you've displayed an angry attitude towards the respondent, and —

Q: Can you be more specific —

A: As if you had prejudged.

Q: So that we can itemize those encounters.

A: I'd have to listen to the tape again, Your Honor, in order to do that. And I would note for the record that, this morning, Your Honor, I was late for which I apologize. I would also note that upon arrival here the line outside the building was clear across to the alley. So it was a long time to get into the elevator and come up. And, I mean, if I'm correct, Your Honor, you just stated that you would grant the motion, now you're coming back and saying that you need to consider it on the record.

Vargas' counsel then argued that the IJ's voice tones indicated that the IJ had prejudged the case, and that the IJ had stated frequently on the record that the IJ did not believe that Vargas was eligible for § 212(c) relief. The IJ clarified that she was merely asking whether there was a legal bar to § 212(c) relief or not, and denied Vargas' recusal motion.

**[11]** Contrary to Vargas' counsel's allegations, the IJ never ruled that Vargas was ineligible for a § 212(c) waiver. A review of the October 17, 2002 hearing reveals that the IJ only asked whether Vargas' voluntary manslaughter conviction was a murder in order to determine his eligibility for § 212(c) relief. Vargas has not met his burden of showing that the IJ had a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Ni v. BIA*, 439 F.3d 177, 181 (2d Cir. 2006) (*citing Litekey*, 510 U.S. at 555, and noting "substantial burden" on alien to show bias from the proceedings). Our review of the record reveals no support for Vargas' allegation that the IJ prejudged his application for § 212(c) relief. In addition, Vargas' allegations of bias are undermined by the IJ's professional behavior during a full day of testimony after the recusal motion, and while taking additional evidence on February 12, 2003. Furthermore, the IJ's decision considered all the issues raised by Vargas and does not reflect any bias or animosity toward him.

## B.

**[12]** An alien is entitled to a "full and fair hearing" that meets the requirements of due process. *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999). In order to prevail on a due process claim that he was denied a full and fair hearing, an alien must also show prejudice — that his rights were violated "in a manner so as potentially to affect the outcome of the proceedings." *Id.* (quoting *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986)). We have held that if the factual record adequately supports the denial of an alien's application for relief, we cannot find that the alleged bias held by the IJ was the basis for the denial of the application. *Hassan v. INS*, 927 F.2d 465, 469 (9th Cir. 1991). Where an alien is given a full and fair opportunity to be represented by counsel, to prepare an application for § 212(c) relief, and to present testimony and other evidence in support of the application, he or she has been provided with due process. *See Burgos-Abril v. INS*, 58 F.3d 475, 476-77 (9th Cir. 1995) (concluding

that no due process violation occurred when alien "was given a full and fair opportunity (1) to be represented by counsel at the deportation proceedings, (2) to prepare her application for § 212(c) relief, and (3) to present testimony and other evidence in support of her application.").

**[13]** This is not a case where the IJ prevented a full examination of the applicant, *Colmenar v. INS*, 210 F.3d 967, 972 (9th Cir. 2000), stood in moral judgment of the alien, *see Reyes-Melendez v. INS*, 342 F.3d 1001, 1007-09 (9th Cir. 2003), or pressured a pro se alien to drop a claim for relief that he was entitled to pursue, *see Cano-Merida v. INS*, 311 F.3d 960, 964-65 (9th Cir. 2002). The IJ's single exchange of words with Vargas' attorney concerned the attorney's conduct, not Vargas or the merits of his case. The record reveals that Vargas was given a full and fair opportunity to present his case for a § 212(c) waiver, and he does not claim there is additional evidence that the IJ refused to consider. *See Burgos-Abril*, 58 F.3d at 476-77. We conclude that Vargas received due process and that the exchange between his counsel and the IJ did not prevent him from presenting evidence or arguments relevant to his case.

## CONCLUSION

Vargas' prosecution and conviction in California as an adult precluded the IJ and the BIA from treating his conviction as a juvenile adjudication. As a result, his 1991 voluntary manslaughter conviction made him removable as an aggravated felon for having committed a crime of violence, and this court does not have jurisdiction to review the order of removal.

In addition, because discretionary grants of adjustment of status and § 212(c) relief involve the same equitable balancing, and because we uphold the denial of § 212(c) relief, Vargas cannot show prejudice from the denial of a continuance to pursue his adjustment of status application. Finally,

although the IJ and Vargas' counsel exchanged words and the IJ denied a request for recusal, our review of the record shows that the IJ did not exclude evidence, preclude testimony, or otherwise prevent Vargas from fully presenting his request for a § 212(c) waiver, and her decision was not based on an improper bias against Vargas or his attorney.

**DISMISSED** as to the treatment of Vargas' juvenile conviction and **DENIED** on the due process and bias claims.