**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARACELI CRUZ RENDON,

                    *Petitioner,*

          v.

ERIC H. HOLDER JR., Attorney
General,*

                    *Respondent,*

No. 06-70301

Agency No.
A70-942-106

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 8, 2009—Pasadena, California

Filed December 2, 2009

Before: Harry Pregerson and David R. Thompson,
Circuit Judges, and Jeremy Fogel, District Judge**

Opinion by Judge Fogel

---

*Eric H. Holder Jr. is substituted as the defendant pursuant to Fed. R.
App. P. 43(c)(2).

**The Honorable Jeremy Fogel, United States District Judge for the
Northern District of California, sitting by designation.

15779

**COUNSEL**

Sung U. Park, Los Angeles, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; Linda S. Wernery, Assistant Director; and Dimitri N. Rocha, Attorney, United States Department of Justice, Washington, DC, for the respondent.

## OPINION

FOGEL, District Judge:

Petitioner Araceli Cruz Rendon ("Cruz Rendon"), a native and citizen of Mexico, seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the denial of her application for cancellation of removal by the Immigration Judge ("IJ"). Cruz Rendon claims that the "exceptional and extremely unusual hardship" requirement of 8 U.S.C. § 1229b(b)(1) violates the Equal Protection Clause of the United States Constitution, and that the IJ denied her a full and fair hearing in violation of the Due Process Clause. We have jurisdiction pursuant to 8 U.S.C. § 1252. We agree that the IJ denied Cruz Rendon a full and fair hearing and that this prejudiced Cruz Rendon's ability to present evidence in support of her application for cancellation of removal. Accordingly, we grant the petition for review and remand to the BIA with instructions to order a new hearing before the IJ.

## BACKGROUND

Cruz Rendon entered the United States illegally at some time after January 1, 1990. In 2004, the government initiated removal proceedings against her. Cruz Rendon appeared before IJ Anna Ho on November 15, 2004 and requested a continuance so that she could retain counsel; the IJ granted a one-month continuance until December 16, 2004. On that date, Cruz Rendon appeared with counsel, conceded removability, and requested cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1)[1] or, in the alternative, voluntary depar-

---

[1]Section 1229b(b)(1) gives the Attorney General discretion to cancel the removal and adjust the status of an alien if the alien: (1) has been physically present in the United States for a period of at least ten years; (2) has been a person of good moral character during such period; (3) has not been convicted of one of a list of enumerated offenses; and (4) establishes that removal "would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child who is a citizen or lawful permanent resident of the United States." 8 U.S.C. § 1229b(b)(1).

ture. The IJ continued the matter one additional month for a merits hearing, which was conducted as scheduled on January 14, 2005. At the start of the hearing, the IJ indicated that Cruz Rendon had satisfied the first three requirements of § 1229b(b)(1), and that the application turned on the fourth requirement, that is, whether Cruz Rendon's removal "would result in exceptional and extremely unusual hardship" to her four-year-old United States citizen child, Jose.

*Psychological Evaluation*

Cruz Rendon presented a written psychological evaluation of Jose that had been prepared approximately one week before the merits hearing. The report noted that Jose was born in the United States, was bilingual, and attended a public pre-school, and that Cruz Rendon supported herself and Jose by ironing for a clothing manufacturer. The report stated that Jose displayed symptoms of Attention Deficit/Hyperactivity Disorder ("ADHD"), and that children with ADHD do not respond well to changes in environment or in caretakers. The report also indicated that Jose might have learning and speech disabilities. The report concluded that separation from his mother or relocation to Mexico would create emotional distress for Jose and would worsen his problems. The report recommended that Jose be given a "thorough psychoeducational assessment" to determine his needs.

The IJ orally summarized the written evaluation as follows: "the psychologist seem [sic] to indicate that the child may be suffering from attention deficit, but he doesn't know. Also, the child may have speech therapy, but he doesn't know." The IJ then stated that "[t]he mere fact that a child may have attention deficit, and even if he did have attention deficit, does not mean that he cannot have proper treatment in Mexico." The IJ indicated that Cruz Rendon had not presented evidence as to lack of opportunity for treatment in Mexico, and then stated, "[b]esides, the child is only 4-years-old." The IJ directed Cruz Rendon's counsel to present evidence of excep-

tional and extremely unusual hardship to Jose, but limited such evidence to matters not addressed in the psychological evaluation.

*Cruz Rendon's Testimony*

Cruz Rendon began her substantive testimony by discussing her concerns that Jose was hyperactive, had difficulty learning, and had problems speaking. The IJ cut off Cruz Rendon's testimony, stating that the psychologist had addressed these issues in the written report. When counsel later tried to revisit Cruz Rendon's concerns, the IJ stated that "I believe the psychologist's evaluation is much better than what this lady has to tell me." The IJ also interrupted counsel when he attempted to ask Cruz Rendon where she was employed, stating that Cruz Rendon's employment history was covered in the report.

Cruz Rendon testified that she feared Jose would suffer if he had to go to school in Mexico, because based upon her own childhood experience she believed that children often are mistreated and beaten in Mexican schools. The IJ inquired whether counsel had other evidence regarding Mexican schools. When counsel responded that he had not had time to obtain such evidence, the IJ stated that "your case has been pending and there's no reason why you could not go on the internet to print some information about schools in Mexico."

Counsel then asked Cruz Rendon about her ability to provide for Jose if they were to relocate to Mexico. Cruz Rendon testified that it would be difficult to manage, because her only family member in Mexico was her mother, who was elderly and lacked the patience to care for Jose. Cruz Rendon testified that Jose's father left when Jose was born and did not contribute to Jose's support. She stated that she would not be able to buy Jose sufficient food and clothing in Mexico, because she likely would earn less than five or ten dollars a day there. The

IJ cut off that line of questioning because Cruz Rendon had not actually looked for a job in Mexico.

Counsel then attempted to return to the issue of Jose's medical issues, but was interrupted by the IJ, who stated,

> I ask you, counsel, not to go into anything that's already in the psychologist's report. I mean, you have given me a — oh, how many pages is this — a 21 page report by the psychologist. I don't want to hear anything that's already in the report. Anything else?

Counsel made a final attempt to ask Cruz Rendon about her fears for Jose if they relocated to Mexico, at which point the IJ stated "[a]nything else? We've gone over this, over the same things over and over again." Counsel then concluded his examination of Cruz Rendon.

*Oral Ruling of the IJ*

At the close of the hearing, the IJ stated that Cruz Rendon's application for cancellation of removal would be denied. Cruz Rendon's counsel requested leave to give a brief closing before the IJ completed her oral ruling; the IJ denied that request. The IJ then stated as follows:

> I have reviewed the detailed analysis by the psychologist. The child is, as I said, only 4-years-old. There is no definite indication as to exactly what the problem the child has. There is no evidence presented by the psychologist that whatever the hyperactivity this child had, the child is not going to grow out of it as the child grows older. I don't know. There is no evidence presented that there is no such assistance in Mexico, so I can't grant this case. There is no, you have not met your burden of exceptional and extremely unusual hardship.

Cruz Rendon's counsel pointed out that less than one month had elapsed between Cruz Rendon's first appearance with counsel on December 16, 2004 and her merits hearing on January 14, 2005. The IJ stated that "giving [Cruz Rendon] another 3 to 6 months is not going to help in this case." When counsel persisted in asserting that Cruz Rendon had not had an adequate opportunity to present her case, and noted that Jose's school had recommended that Jose be evaluated further, the IJ responded as follows:

> That's fine. But, there's no evidence presented by you that no such assistance is available in Mexico. In fact, I have read many articles that they have special education in Mexico. And, Mexico is really trying very hard to work on this. So, unless you give me evidence, she has not met her burden. All right?

The IJ then granted Cruz Rendon voluntary departure.

*Written Decision of the IJ*

On January 14, 2005, the same date that the merits hearing was conducted, the IJ issued a written order denying Cruz Rendon's application for cancellation of removal.

*Decision of the BIA*

Cruz Rendon appealed the IJ's decision to the BIA, asserting *inter alia* that the IJ's limitation of her testimony and denial of her request for an additional continuance deprived her of the opportunity to present her case. On January 10, 2006, the BIA issued a written decision adopting and affirming the IJ's decision, citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). The BIA found expressly that Cruz Rendon received a full and fair hearing and that the IJ had not erred in denying her request for a continuance.[2]

---

[2]The BIA also noted that Cruz Rendon had not submitted an additional evaluation of Jose while her appeal was pending. However, submission of

## STANDARD OF REVIEW

When the BIA adopts and affirms the IJ's decision with a citation to *Burbano*, and does not disagree with any part of the IJ's decision, we review the IJ's decision as if it were the decision of the BIA. *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009); *Abebe v. Gonzales*, 432 F.3d 1037, 1039 (9th Cir. 2005) (en banc). When the BIA adds its own reasoning, we review both decisions. *Nuru v. Gonzales*, 404 F.3d 1207, 1215 (9th Cir. 2005).

We review for abuse of discretion an IJ's denial of a continuance. *Ahmed*, 569 F.3d at 1012. We review de novo claims of equal protection and due process violations in removal proceedings. *Sandoval-Luna v. Mukasey*, 526 F.3d 1243, 1246 (9th Cir. 2008).

## ANALYSIS

**[1]** "An alien is entitled to a 'full and fair hearing' that meets the requirements of due process." *Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 926 (9th Cir. 2007) (quoting *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999)). "Remand is generally necessary when an alien is prevented from reasonably presenting her case or when an IJ's actions prevent the introduction of significant testimony." *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009). In order to prevail on such a claim, the alien must demonstrate that the challenged proceeding "was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Colme-*

---

additional factual evidence to the BIA regarding Jose's medical condition would not have been appropriate, as the BIA does not engage in fact finding on appeal. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (prior version effective Apr. 1, 2005 — Dec. 6, 2006) ("Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in fact finding in the course of deciding appeals.").

*nar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) (internal quotation marks and citation omitted). The alien also must show prejudice, "which means that the outcome of the proceeding may have been affected by the alleged violation." *Id.*; *see also Vargas-Hernandez*, 497 F.3d at 926 ("In order to prevail on a due process claim that he was denied a full and fair hearing, an alien must also show prejudice — that his rights were violated in a manner so as potentially to affect the outcome of the proceedings") (internal quotation marks and citation omitted).

[2] Cruz Rendon claims that the IJ denied her a full and fair hearing by unreasonably limiting her testimony and denying her request for a continuance. We agree.[3] The IJ precluded Cruz Rendon from testifying as to any topic that was mentioned at all in the psychological evaluation. Because that evaluation contained background information about both Cruz Rendon and Jose and discussed Jose's medical and educational issues, the IJ precluded Cruz Rendon from offering any significant testimony of her own regarding the life she had created for Jose in the United States, Jose's medical and educational needs, and the hardships Jose would face if forced to relocate to Mexico. All of these are factors that an IJ should consider when adjudicating an application for cancellation of removal. *See In Matter of Monreal*, 23 I. & N. Dec. 56, 63-64 (BIA 2001) (stating that the age, health, and circumstances of qualifying citizen relatives must be considered, as well as adverse conditions in the country of return, and noting that an application for cancellation of removal might be particularly strong if the qualifying relative is a child with serious health issues or compelling special educational needs). While the psychologist's report addressed each of these factors to some

---

[3]In light of our disposition of the appeal on due process grounds, we need not reach Cruz Rendon's alternative claim that the "exceptional and extremely unusual hardship" requirement of 8 U.S.C. § 1229b(b)(1) violates the Equal Protection Clause. We note, however, that Cruz Rendon's equal protection claim turns upon her ability to demonstrate that the treatment of her son "differed from that of similarly situated persons." *See Dillingham v. INS*, 267 F.3d 996, 1007 (9th Cir. 2001).

degree, Cruz Rendon should have been permitted to provide her own account of the matters discussed in the report. The IJ, however, repeatedly interrupted Cruz Rendon's testimony when it touched upon subject matter "already in the report."

**[3]** During the hearing, the IJ indicated that Cruz Rendon had not presented sufficient evidence that Jose had special needs or that such needs could not be met by the schools in Mexico. However, when Cruz Rendon's counsel requested a continuance to obtain additional evidence, the IJ denied the request. "The decision to grant or deny the continuance is within 'the sound discretion of the judge and will not be overturned except on a showing of clear abuse.' " *Ahmed*, 569 F.3d at 1012 (quoting *Sandoval-Luna*, 526 F.3d at 1247). However, this discretion is not without limits. *Ahmed*, 569 F.3d at 1012. When determining whether an IJ has abused her discretion, we consider a number of factors, including: (1) the nature of the evidence excluded as a result of the denial of the continuance; (2) the reasonableness of the immigrant's conduct; (3) the inconvenience to the court; and (4) the number of continuances previously granted. *Id.*

**[4]** A continuance would have afforded Cruz Rendon time to obtain additional evaluations regarding Jose's medical and educational issues, including the full assessment recommended by the psychologist, as well as evidence regarding the type of support she could obtain for Jose in the Mexican school system. The need for a continuance did not result from any unreasonable conduct on Cruz Rendon's part. Although Cruz Rendon previously had received two continuances, both were exceedingly short; as her counsel pointed out, the merits hearing occurred *two months* after Cruz Rendon's initial appearance and *less than one month* after Cruz Rendon first appeared with counsel. Cruz Rendon's inability to marshal significant documentary evidence in this short time frame is unsurprising.

Respondent makes much of the fact that the IJ initially offered to set the merits hearing three months after counsel's

initial appearance, and that it was only because of counsel's scheduling conflicts that the merits hearing finally was set only one month out. The IJ initially did propose later dates for the merits hearing. However, she became increasingly testy with Cruz Rendon's counsel when he disclosed conflicts with her proposed dates; by the time she suggested the date ultimately selected, any reasonable attorney likely would have acquiesced.

A further continuance would not have inconvenienced the court, except to the extent that the IJ wanted the case off her docket. On this last point, the IJ stated that:

> Just because other cases pend, stays pending in a court more than 2 or 3 years does not mean that this court has to allow a case to stay open for 2 or 3 years. And I am not going to do that, because when you delay one case, you delay three other cases.

**[5]** Each of the foregoing factors favored the grant of a continuance in Cruz Rendon's case. To the extent that the IJ gave them any consideration, she appeared most concerned with the purported inconvenience to herself resulting from delay of the case. "We have repeatedly warned that 'a myopic insistence upon expeditiousness' will not justify the denial of a meritorious request for delay." *Ahmed*, 569 F.3d at 1013 (quoting *Cui v. Mukasey*, 538 F.3d 1289, 1292 (9th Cir. 2008)). Accordingly, we conclude that the IJ abused her discretion in denying the continuance.

**[6]** We have no difficulty concluding that the denial of the requested continuance, in conjunction with the limitations placed upon her testimony, prevented Cruz Rendon from fully and fairly presenting her case. We likewise conclude that the outcome of the hearing may have been affected by these procedural deficiencies. The IJ stated repeatedly that Jose was "only" four years old, and apparently formed the opinion that Jose might simply outgrow his problems. Had Cruz Rendon

been permitted to offer more detail about Jose's medical and educational issues, and had a continuance been granted to permit the further evaluation recommended by Jose's psychologist, the IJ's conclusion might have been different. Moreover, had Cruz Rendon been afforded time to obtain evidence regarding the schools in Mexico, the IJ might not have relied impermissibly upon her own unsupported opinion that Mexico "is really trying very hard to work on [special education]."**[4]**

**PETITION FOR REVIEW GRANTED; REMANDED WITH INSTRUCTIONS.**

---

**[4]**We are deeply troubled by the IJ's conduct in this case, which exhibits a fundamental disregard for the rights of individuals who look to her for fairness. We have made similar observations about this IJ on a number of previous occasions. *See, e.g., Shi v. Holder*, No. 05-72223, 2009 WL 2171407, at *1 (9th Cir. June 26, 2009) (finding that IJ Ho exhibited "obvious bias" when she "badgered Shi with loaded, pejorative questions and effectively abandoned her role as a neutral fact finder"); *Smolniakova v. Gonzales*, 422 F.3d 1037, 1047 n.2 (9th Cir. 2005) (suggesting that IJ Ho may have "improper hostility towards asylum applicants who appear before her"); *Rivera v. Ashcroft*, 394 F.3d 1129, 1135 (9th Cir. 2005) (holding that IJ Ho "did not conduct herself as an impartial judge but rather as a prosecutor anxious to pick holes in the petitioner's story") (internal quotation marks and citation omitted)).