**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1301
_____

LLOYD PENNIX,
a/k/a Lloyd Washington Ferguson,
a/k/a Lloyd Pinnance,
a/k/a Lloyd W. Ferguson,
a/k/a Frank Ferguson,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent
_____

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
(Agency No. A013-226-791)
Immigration Judge: Hon. Margaret Reichenberg
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2015
_____

Before: SHWARTZ, KRAUSE, and GREENBERG, <u>Circuit Judges</u>

(Filed: October 6, 2015)
_____

1

OPINION*
_____

SHWARTZ, Circuit Judge.

Lloyd Pennix,[1] a native of Belize, a citizen of the United Kingdom, and a lawful permanent resident of the United States, petitions for review of a decision of the Board of Immigration Appeals ("BIA") ordering his removal and denying his request for a waiver under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c).  Because we lack jurisdiction to review the BIA's discretionary decision, we will dismiss the petition.

I

Pennix was charged with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) for a 1988 conviction for aggravated sexual assault of a minor, in violation of N.J. Stat. Ann. § 2C:14-2a.  Pennix conceded the truthfulness of the allegations as well as his removability, but sought a waiver under § 212(c), claiming that his significant family ties and long history in the United States, the age of his conviction, and other positive factors merited a favorable exercise of the Immigration Judge's ("IJ's") discretion.

In her decision, the IJ considered both the negative and positive factors impacting the propriety of granting a waiver.  The IJ first considered the negative factors stemming from Pennix's conviction for aggravated sexual assault, arising from his "compulsive,

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.
[1] Although Pennix has legally changed his last name to Ferguson, we will refer to him by the name used during the immigration proceedings.

2

repetitive" sexual intercourse with the underage daughter of his then-wife. Pennix ultimately served six years of what was originally a twelve-year sentence, during which he underwent daily therapy sessions. The IJ also considered a 2003 conviction for misdemeanor assault. Although Pennix claimed the conviction resulted from an altercation in which he was merely defending himself, the IJ concluded that the conviction was not for a minor offense, and that Pennix's overall criminal history was an "extremely serious negative factor." A.R. 94.

The IJ then considered factors favoring Pennix, focusing on his nearly half century in the United States, his long and consistent work history, and his family ties here. The IJ also found that Pennix had acknowledged complete responsibility for his sexual assault offense and demonstrated "sincere and genuine rehabilitation." A.R. 94. Expressing that it was a "close case," the IJ concluded that Pennix had demonstrated "unusual or outstanding equities" and exercised discretion to grant Pennix's application for a waiver of inadmissibility under § 212(c). A.R. 94-95.

The Department of Homeland Security ("DHS") appealed the IJ's decision to the BIA. The BIA reviewed the IJ's decision de novo and relied on the IJ's factual determinations pursuant to 8 C.F.R. § 1003.1(d)(3)(ii), (iv). The BIA noted that it was required to weigh negative factors against positive factors, such as "social and humane considerations presented [o]n [Pennix's] behalf to determine whether, on balance, [his] continued residence in the United States would be in the best interests of this country." A.R. 3-4 (citing Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978); Matter of Arai,

3

13 I. & N. Dec. 494, 495-96 (BIA 1970)). The BIA agreed with the IJ's determination that Pennix's criminal history was an "extremely serious negative factor" requiring demonstration of "unusual or outstanding equities," and accepted the IJ's factual findings that Pennix's positive equities were in fact "unusual or outstanding." A.R. 4. Nevertheless, the BIA concluded that his "criminal record, particularly his 1988 aggravated sexual assault conviction, [wa]s too severe to overlook," A.R. 4, and that his case did not merit an exercise of discretion. The BIA reversed the IJ, denying Pennix a waiver of inadmissibility, and entered an order of removal.[2] Pennix appeals.

## II

We must first determine whether we have jurisdiction to review the BIA's removal order and waiver denial. See Alaka v. Att'y Gen., 456 F.3d 88, 94 n.8 (3d Cir. 2006). Judicial review of removal proceedings is barred by 8 U.S.C. § 1252(a)(2), except to the extent that the petitioner raises a "purely legal inquiry" or "a colorable claim that a constitutional violation has occurred." Rachak v. Att'y Gen., 734 F.3d 214, 216 (3d Cir. 2013) (internal quotation marks and citations omitted); see also 8 U.S.C. § 1252(a)(2)(D). Specifically, § 1252(a)(2)(B)(ii) strips courts of the jurisdiction to review any decision "in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).[3] Granting a waiver of inadmissibility under former INA

---

[2] One member of the BIA dissented, noting that she would have remanded for additional fact finding regarding Pennix's rehabilitation.

[3] Section 1252(a)(2)(C) also prevents judicial review of a final order of removal against an alien removable for having committed an aggravated felony under 8 U.S.C.

4

§ 212(c) constitutes a discretionary decision.  See INS v. St. Cyr, 533 U.S. 289, 325 (2001); see also Vargas-Hernandez v. Gonzales, 497 F.3d 919, 923 (9th Cir. 2007) ("Discretionary decisions, including whether or not to grant § 212(c) relief, are not reviewable.").

Pennix argues that the BIA erred "as a matter of law" in reversing the IJ's initial decision because it failed to appropriately weigh the positive and negative factors of his application.  Labeling a challenge as a "matter of law" cannot create jurisdiction where it does not otherwise exist.  See Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim.  To do otherwise would elevate form over substance and would put a premium on artful labeling.").  Moreover, arguments that an immigration court has not properly weighed evidence or certain equitable factors are not questions of law under § 1252(a)(2)(D).  Id.  Here, Pennix does nothing more than argue that the BIA should have given greater weight to the positive factors and less weight to the negative factors.  Because he challenges the BIA's discretionary weighing of factors and does not raise a legal or constitutional issue, we lack jurisdiction to review the BIA's decision.

---

§ 1227(a)(2)(A)(iii).  Pennix conceded before the IJ that he was subject to removal on this ground by virtue of his aggravated sexual assault conviction, and does not challenge that conclusion here.  No party challenges the ruling that Pennix's 2003 misdemeanor assault conviction is not a crime of moral turpitude, and therefore § 1227(a)(2)(A)(ii) does not apply to it.

His reliance on Huang v. Attorney General, 620 F.3d 372 (3d Cir. 2010), does not change the outcome. We held in Huang that, in disagreeing with an IJ on either the facts or the law, the BIA must demonstrate that it "meaningful[ly] consider[ed] the record as a whole." Huang, 620 F.3d at 387. Under Huang, the BIA's failure to show it reviewed the record and considered the evidence may demonstrate an incorrect application of a legal standard, which we would have jurisdiction to review. See id.; see also Roye v. Att'y Gen., 693 F.3d 333, 339 (3d Cir. 2012) (jurisdiction exists to determine whether the BIA's exercise of discretion employed the correct standard).

That is not the case here. The BIA's decision reflects consideration of the factors the IJ relied upon in making her decision. Although the BIA's decision does not go into detail about each of Pennix's positive factors, it is not required to do so. See Huang, 620 F.3d at 388 ("While we are not suggesting that the BIA must discuss every piece of evidence mentioned by an [] applicant, it may not ignore evidence favorable to the alien . . . ."); Kamara v. Att'y Gen., 420 F.3d 202, 212 (3d Cir. 2005) (reiterating that BIA opinions need not be "model[s] of exposition" so long as they allow the court to determine the basis of its decision). The BIA accepted the IJ's findings about the strength of Pennix's positive factors, and deferred to the IJ's views about his rehabilitation. It simply parted company with the IJ concerning the weight to be given to Pennix's convictions, concluding that they were "too severe to overlook," and finding that Pennix's sexual assault conviction was "strong evidence of his undesirability as a permanent resident" and that a discretionary decision in his favor would not be in the

6

interests of the United States, despite his demonstration of outstanding equities. A.R. 4 (internal quotation marks omitted).

Because the BIA's reasoning was sufficient to demonstrate its complete review of the record, and reflects the grounds for its discretionary decision, we lack jurisdiction to review Pennix's claims.[4]

## III

For the foregoing reasons, we will dismiss the petition.

---

[4] Pennix also argues that the BIA's decision that his conviction was too severe to overlook creates a "bright line" rule regarding certain categories of crimes. To the contrary, the BIA's opinion reflected an individualized view of the record before it. Specifically, the BIA discussed Pennix's crimes and cited to its own precedent regarding the impact of certain crimes on individual determinations. While the creation of a bright line rule could give rise to a due process claim in that it would reflect a lack of individualized determination, see Abdulai v. Ashcroft, 239 F.3d 542, 549-50 (3d Cir. 2001), there is no indication that the BIA created or applied such a rule.