NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 12 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NORMA CANDELERO PEREZ, | No. 19-70900 |
| Petitioner, | Agency No. A094-968-336 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 3, 2021**
Pasadena, California

Before: HIGGINSON,*** HURWITZ, and COLLINS, Circuit Judges.

Norma Isabel Candelero Perez petitions for review of a decision of the

Board of Immigration Appeals ("BIA") dismissing her appeal from an order of an

Immigration Judge ("IJ") denying her request for asylum, withholding of removal,

and protection under the Convention Against Torture ("Torture Convention") and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes that this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

\*\*\* The Honorable Stephen A. Higginson, United States Circuit Judge for the U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

ordering her removed to Guatemala. We have jurisdiction under § 242 of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1252. We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc). A finding is supported by substantial evidence unless "'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)). We review claims of due process violations de novo. *Yan Liu v. Holder*, 640 F.3d 918, 930 (9th Cir. 2011). We deny the petition.

1. Substantial evidence supports the agency's conclusion that Candelero Perez was ineligible for asylum because she failed to establish past persecution or a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see also id*. § 1158(b)(1)(B). In contending that she established persecution on account of a protected ground, Candelero Perez relies on her asserted membership in two "particular social group[s]"[1] and an imputed "political opinion." The agency held that Candelero Perez did not satisfy her burden of proof

---

[1] She also raises for the first time in this court a third particular social group: "Guatemalan women who report crimes against them[selves] to the police." Because she failed to exhaust this argument before the agency, we lack jurisdiction to consider it. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004).

2

because (1) her testimony was not credible, and (2) even if her testimony was taken as true, she failed to establish several elements of her asylum claim. We need not decide whether the adverse credibility determination was proper, because we agree that Candelero Perez's asylum claim fails on independent grounds.

a. Assuming without deciding that Candelero Perez's two asserted particular social groups—(1) "Guatemalan Christian women unable to leave a forced romantic relationship with a powerful pastor" and (2) "Guatemalan Christian women who refused to comply with the sexual orders of a powerful pastor with government connections"—are cognizable, we conclude that substantial evidence supports the agency's finding that Candelero Perez's pastor did not sexually abuse her on account of her asserted membership in either group. Because, by definition, her membership in the first group required the pastor's abuse to have already begun, the IJ reasonably concluded that the initial abuse could not have been motivated by such membership. And, on this record, the agency further permissibly concluded that, once the abuse began, the pastor was not motivated, and would not be motivated in the future, by Candelero Perez's asserted membership in either group. Substantial evidence therefore supports the agency's determination that the pastor was "motivated by his own deviant sexual desires rather than by [Candelero Perez's] membership in one of the proposed [social] groups."

3

b.  Assuming without deciding that being "anti-crime" reflects a cognizable political opinion, substantial evidence supports the agency's finding that Candelero Perez's harassment by a man named Anibal was not "on account of an actual or imputed political opinion."  Candelero Perez testified that Anibal wanted her to help him deposit checks for a money-laundering scheme "because [she] was an employee at the bank."  The agency permissibly concluded that Candelero Perez had not "presented evidence suggesting that Anibal believed she held any particular political opinion."[2]

Because the agency permissibly concluded that Candelero Perez had "not established that she was or will be persecuted in Guatemala on account of a protected ground," substantial evidence supports the denial of her claim for asylum.  *See* 8 U.S.C. § 1158(b)(1)(B).

2.  Substantial evidence supports the agency's finding that the pastor's sexual abuse and Anibal's harassment were only motivated by their respective criminal desires, not "on account of a protected ground."  The agency reasonably concluded that Candelero Perez failed to establish that any protected ground was a

---

[2] Candelero Perez briefly suggests on appeal that Anibal targeted her on account of her membership in one of the two particular social groups.  She also suggests on appeal that her imputed political opinion was actually "anti-crime due to her Christian morals."  However, she failed to exhaust either argument before the agency, and we thus lack jurisdiction to consider them now.  *See Barron*, 358 F.3d at 678.

reason for any of the mistreatment, as required for withholding of removal claims. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

3. To qualify for Torture Convention protection, Candelero Perez was required to establish that, if removed to Guatemala, "it is more likely than not that . . . she would be tortured," 8 C.F.R. § 1208.16(c)(2), and that the torture would be "'inflicted by or at the instigation of or with the consent or *acquiescence* of a public official or other person acting in an official capacity.'" *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003) (citation omitted). Substantial evidence supports the agency's conclusion that Candelero Perez has "not shown that a government official . . . would acquiesce to any future harm."

a. Candelero Perez never reported the pastor's sexual abuse to the police. She argues that reporting would have been futile because the pastor "had connections with the mayors of the municipality and . . . was very powerful and recognized" locally. But the record indicates that after Candelero Perez told her sister about the abuse, the pastor tried to intimidate her with verbal threats and, on one occasion, he veered his car toward her on the street and said that she was not going to be the reason why he would lose his place in society. Based on such evidence, the agency concluded that "the pastor's anger after he learned that [Candelero Perez] told her sister about the abuse suggests that the pastor feared the consequences" of a public accusation and that futility therefore was not

5

demonstrated. We cannot say that this was an unreasonable reading of the record evidence or that the record compels a contrary conclusion. The BIA also reasonably found that documentary evidence in the record indicates that the Guatemalan "government has made substantial efforts to combat violence against women and protect victims of abuse." This evidence, which Candelero Perez fails to address in her briefing to this court, further supports the conclusion that she did not establish the futility of reporting the pastor.

b. Candelero Perez argues that the police refused to help after she reported Anibal and instead laughed, told her to pay for private security, and did not arrest him. Her own testimony and declaration, however, reflect that the police summoned Anibal after she reported him and increased their presence in her neighborhood. And because she failed to properly submit the police report to the immigration court, the agency permissibly concluded that the reason why Anibal was not arrested had not been established. Candelero Perez also argued that Anibal had "government ties," namely that his uncle was then the mayor,[3] but the record reflects that the uncle himself has been charged with a crime. On this record, substantial evidence supports the agency's conclusion that Candelero Perez

---

[3] She also mentions that "Anibal worked for the municipality," but she does not explain how his employment would equate to government acquiescence, and she did not show that Anibal intended to commit money laundering or harass Candelero Perez on behalf of the government.

6

did not establish that Anibal was "immune from future prosecution."

Because Candelero Perez failed to establish that the government would acquiesce to any future torture, her request for protection under the Torture Convention was properly denied. *See Zheng*, 332 F.3d at 1188.

4. Finally, the BIA properly rejected Candelero Perez's assertion that the IJ displayed improper bias against her in violation of due process. The hearing transcript reflects that the IJ was frustrated at times with both Candelero Perez and her attorney, correcting them on many occasions for, *inter alia*, the form of the attorney's questions and Candelero Perez's answers. The transcript also confirms that the IJ asked Candelero Perez several questions, including leading questions, and that he *sua sponte* played a recording from a past removal hearing, during which Candelero Perez failed to cite the pastor's sexual abuse as a reason she left Guatemala. But the IJ did not display a "'predisposition to discredit'" Petitioner's testimony, *see Yan Liu*, 640 F.3d at 931 (citation omitted), nor did he act as a "partisan adjudicator," *see Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). Rather, he exercised his express statutory authority to "interrogate, examine, and cross-examine the alien and any witnesses," *see* 8 U.S.C. § 1229a(b)(1); *see also Halaim v. INS*, 358 F.3d 1128, 1137 (9th Cir. 2004), and sought to control the manner and pace of the proceeding and to clear up inconsistencies as part of his duty to "fully develop the record," *see Jacinto v. INS*, 208 F.3d 725, 734 (9th Cir.

7

2000). Candelero Perez also claims that the IJ's questions inappropriately "blame[d]" her for the sexual assaults she suffered. However, the questioning did not evince improper bias in light of the IJ's duty to develop the record, and the IJ's ultimate written decision blamed the pastor, describing him as a "sick individual" who had committed a "heinous sex crime against a minor" in order to "satisfy his own psychopathy and pedophilia."

Candelero Perez does not argue that any of the IJ's conduct "prevented [her] from reasonably presenting" any evidence that would have strengthened her claims, *see Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620–21 (9th Cir. 2006); *see also Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006), and instead only argues that the IJ's alleged bias led him to find her not credible. However, because we have concluded that the "factual record adequately supports the denial of [her] application for relief" even assuming Candelero Perez's credibility, we "cannot find that [any] alleged bias held by the IJ was the basis for the denial of the application." *See Vargas-Hernandez v. Gonzalez*, 497 F.3d 919, 926 (9th Cir. 2007); *Hassan v. INS*, 927 F.2d 465, 469 (9th Cir. 1991).

The petition is **DENIED**.