# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 12, 2012

Lyle W. Cayce
Clerk

No. 11-60524
Summary Calendar

KINGSLEY DAYO,
Also Known as Kingsley Pedersoli, Also Known as Dayo Kingsley,
Also Known as Kingsley Dayo Pedersoli, Also Known as Kingsley J. Dayo,
Also Known as Darryl Lamont Gates,

                                        Petitioner,

versus

ERIC H. HOLDER, JR., U.S. Attorney General,

                                        Respondent.

Petition for Review of an Order
of the Board of Immigration Appeals

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Proceeding at all times *pro se*, Kingsley Dayo petitions this court to review the denial by the Board of Immigration Appeals ("BIA") of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), based on the government's violation of confidentiality in revealing

No. 11-60524

to the Nigerian consulate that he had applied for asylum.  This court has never addressed the proper relief for such a violation, but we now join the Second and Fourth Circuits in allowing the applicant a separate claim for relief based on the breach of confidentiality.  Because the BIA considered this separate claim, and because its denial of relief on that ground is supported by substantial evidence, we deny the petition for review.

## I.

Dayo is a citizen and native of Nigeria who the Department of Homeland Security ("DHS") claims arrived in the United States in November 2004 without being admitted or paroled after inspection.  He appeared before an immigration judge ("IJ") in October 2009 and denied the allegation, claiming he had arrived in 1995 on a J-1 visa.  DHS presented evidence that in 2004 Dayo had used a passport and New York birth certificate in the name of Darryl Lamont at Miami International Airport, but when his true identity was discovered, he was detained for an outstanding warrant for a New York weapons offense.  With this evidence in the record and no evidence supporting Dayo's claim to have entered legally under a J-1 visa, the IJ found that the DHS's allegation appeared correct and ordered Dayo's removal.

Dayo applied for asylum, withholding of removal, and protection under the CAT.  He claimed he left Nigeria because he was a member of the Movement for the Survival of the Ogoni People ("MOSOP"), which protests the Nigerian government's policy of forcing Ogoni out of the land so oil companies can drill there. Dayo said his father was the deputy director of the group, and his mother was a member.  Before his parents fled, he was arrested and tortured to get a confession and to find out where the MOSOP members were located.  He was released when MOSOP bribed the police, and he came to the United States.  He also claims his mother was killed in 2003 when she returned to Nigeria.  He had no

documentary evidence to support his claims and no knowledge of his father's location.

The IJ decided that Dayo had not proved his case for asylum: His testimony was not credible enough or detailed enough, and the application was untimely. For the same lack of evidence, the IJ denied relief under the CAT. The BIA affirmed that conclusion on appeal. Additionally, the BIA denied Dayo's motion to reopen the case to admit affidavits executed by his friends about human rights in Nigeria, despite Dayo's argument that his detention and lack of familiarity with United States' laws prevented him from getting the evidence earlier.

Dayo petitioned this court for review. We noted that the IJ had held that Dayo's asylum application was not timely, so we could not review it. We also decided that there was substantial evidence supporting the IJ's adverse credibility finding. *Dayo v. Holder*, 413 F. App'x 745, 745-46 (5th Cir. 2011) (per curiam).

Dayo then raised, in the BIA, a new argument for asylum based on a breach of confidentiality in violation of 8 C.F.R. § 208.6. Because this circuit has never addressed the issue of what relief is due for such a breach, the BIA followed the Second and Fourth Circuits and reopened the matter to allow the breach to be added as a new ground for asylum.

Dayo contends that DHS officer Leonard Davis gave the Nigerian Consulate a copy of Dayo's asylum application when forwarding to the consulate the immigration paperwork needed to get Dayo a travel document. Dayo claims to know that because a Ms. Helen at the consulate told him so over the phone. Davis denied that he included a copy of the asylum application; he testified that he overheard the phone conversation between Dayo and Helen, and they did not discuss the application. Instead, DHS believes the Nigerian consulate learned about the application because Davis did not redact a footnote in the removal

No. 11-60524

order that noted that Dayo's application for asylum was untimely.

The IJ found Davis more credible. Dayo filed for asylum based on the breach of confidentiality. The IJ concluded that Dayo had failed to show past and future persecution because of his membership in MOSOP or that MOSOP members were persecuted now, and he did not establish that asylum-seekers were persecuted.

The BIA affirmed the IJ's decision. First, it found Dayo's claims of past persecution for MOSOP membership time-barred and his testimony not credible. Considering Dayo's claim of future persecution, the BIA affirmed the finding that Dayo had not established a well-founded fear based on the confidentiality breach, because he had failed to show that asylum-seekers were persecuted. The BIA also agreed that the letters Dayo submitted allegedly from his grandfather in Nigeria and a Mr. Ese, who had been deported to Nigeria previously, did not provide enough objective evidence to support his claims that he would be persecuted. Ese's letter contained merely bald accusations, his signature did not match between the two documents submitted, and Dayo's grandfather's letter saying the police were looking for Dayo did not claim it was because he had applied for asylum.

## II.

Although this circuit has never addressed the appropriate relief for a violation of 8 C.F.R. § 208.6,[1] some of our sister circuits have. In *Lin v. United States*

---

[1] Section 208.6 provides in pertinent part:

   (a) Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

(continued...)

4

No. 11-60524

*Department of Justice*, 459 F.3d 255, 268 (2d Cir. 2006), the court explained that a violation of the confidentiality protected by § 208.6 is not a mere procedural flaw but could subject the asylum-seeker and his family to additional risks. Still, the court determined that rather than automatically vacating the order of removal, the proper relief was to allow this new risk to serve as the basis for an independent claim of asylum or withholding of removal. *Id.* A similar analysis was used in *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008), stressing the importance of confidentiality to ensure that information that could subject the applicant or his family to retaliation is not released. The court allowed the applicant to make a new claim for relief based on that confidentiality breach. *Id.*

Because some countries persecute persons who sought asylum after repatriation, an asylum-seeker whose confidentiality was violated needs to be able to seek relief if the country to which he is returning will so persecute him. Vacating automatically, however, is improper. Some countries will not persecute unsuccessful asylum-seekers, so the revelation of their failed asylum claim does not harm them. If the IJ and BIA did not feel there was any danger in sending an applicant back before the breach, and the breach does not create any new danger, there is no reason he should not still be removed. Therefore, we join the Second and Fourth Circuits in concluding that although a breach of confidentiality caused by violating 8 C.F.R. § 208.6 does not always require vacating the order of removal, the applicant must be permitted to use the breach for a new claim for asylum, withholding of removal, and relief under the CAT.

---

[1] (...continued)

(b) The confidentiality of other records kept by the Service and Executive Office for Immigration Review that indicate that a specific alien has applied for asylum, received a credible fear or reasonable fear interview, or received a credible fear or reasonable fear review shall also be protected from disclosure. The Service will coordinate with the Department of State to ensure that the confidentiality of those records is maintained if they are transmitted to Department of State offices in other countries.

No. 11-60524

III.

Because the BIA correctly reopened the matter, we must determine whether, considering the violation of § 208.6 and in light of the evidence presented, denying Dayo relief was proper. To qualify for asylum, an applicant must show he is a refugee by proving he suffered past persecution or has a well-founded fear of future persecution. 8 U.S.C. § 1101(a)(42)(A). On petition for review, we will uphold the BIA's decision as long as it is supported by substantial evidence. *Gomez-Mejia v. INS*, 56 F.3d 700, 702 (5th Cir. 1995). The petitioner has the burden of demonstrating that the evidence was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *INS v. Eliaz-Zacarias*, 502 U.S. 478, 483-84 (1992).

The BIA affirmed the IJ's determination that Dayo was not credible. Dayo's only evidence that he suffered past persecution came from his own testimony, so if the BIA's determination that he lacked credibility is supported, Dayo does not have enough evidence to show past persecution. A court can rely on inconsistencies to make adverse credibility determinations if the totality of the circumstances shows the applicant is not credible. *Wang v. Holder*, 569 F.3d 531, 538 (5th Cir. 2009).

Dayo made numerous inconsistent statements. He told an immigration official he was born in Benin City but later told Ms. Helen at the consulate that he did not know where he was from in Nigeria. His statement at Ryker's Island also answered "no" to whether he feared persecution if he returned to Nigeria. Furthermore, he talked about being afraid to go to Nigeria because he was previously targeted there at a teenager, but he also sent letters to the Nigerian consulate asking not to be deported there because he had no family ties and had left at a young age. It was odd he would be so afraid of Nigeria but would correspond with the consulate through letters in matters even beyond just his proceedings in court, expressing independent reasons not to be sent back and drawing addi-

6

No. 11-60524

tional attention to himself. Moreover, in a letter to the Governor of New York asking for a pardon, he claimed he helped raise his siblings but testified here that he was an only child.

Finally, the documents Dayo submitted to support his story were found to be suspicious. The letters he tendered did not include envelopes to show they were mailed from Nigeria. Also, the signatures on Ese's affidavit and letter are substantially different. The record contained substantial evidence showing Dayo lacked credibility.[2]

Having no evidence to support his claims of prior persecution, and with the IJ's ruling that he was not credible supported by substantial evidence, Dayo needed to show a well-founded fear of future persecution by demonstrating a subjective fear of persecution that is also objectively reasonable. *Lopez-Gomez v. Ashcroft*, 263 F.3d 422, 445 (5th Cir. 2001). None of the pieces of evidence submitted supports an argument that Nigeria persecutes those who seek asylum. Nigeria cooperated with the UN High Commissioner for Refugees and other organizations that help refugees and asylum seekers, suggesting the country does not persecute those seeking asylum.

Furthermore, Dayo lacked supporting evidence, because the letters he submitted were not trustworthy. He could not prove that the letter about police looking for him came from his grandfather in Nigeria, and although Dayo testi-

---

[2] Dayo is correct that contrary to the rest of the opinion, page 28 of the IJ's decision appears to accept, as credible, Dayo's assertions that he was a cameraman and protester for MOSOP and that he was arrested. The BIA, however, expressly affirmed the finding that Dayo was not credible, and it did not recognize or adopt the IJ's statement on page 28. We review only the BIA's decision and the parts of the IJ's decision that the BIA utilizes, *Bouchikhi v. Holder*, 676 F.3d 173, 176 (5th Cir. 2012) ("We have authority to review only an order of the BIA, but our task is effectively to review the IJ's decision when the BIA has explicitly adopted it."), so the controlling determination is that the BIA expressly found that Dayo lacked credibility and so could not prove past persecution. Thus, because the reasoning the IJ gave for finding that Dayo lacked credibility was expressly adopted and affirmed by the BIA, that is the relevant reasoning on petition for review. Other portions of the IJ's opinion will not be considered.

No. 11-60524

fied that before 2010, the police had last visited his grandfather in 2008, the letter said the last visit from police was in 1998. Additionally, although Ese said that after the United States sent him back, the Nigerian Government asked whether he had sought asylum, he provides no evidence that he would have suffered if he had said he had done so. Ese's concerns about repercussions are unsubstantiated, and he does not say harm befell any other failed asylum-seekers. Finally, the Amnesty Report that Dayo relies on makes no mention of any governmental abuse faced by failed asylum-seekers. Substantial evidence supports the BIA's determination that Dayo failed to show a well-founded fear of persecution.

Overall, the BIA's decision that Dayo was not entitled to asylum because he could not provide credible evidence of a well-founded fear of future persecution is supported by substantial evidence. Because Dayo could not meet this burden, the BIA was also correct in concluding he could not meet the higher burden required for withholding of removal.[3] An applicant "who has failed to establish the less stringent 'well-founded fear' standard of proof required for asylum relief is necessarily also unable to establish an entitlement to withholding of removal." *Amin*, 535 F.3d at 253. Finally, because the same lack of evidence means that Dayo cannot show he will be tortured, he is not entitled to relief under the CAT.

The petition for review of the BIA's decision denying Dayo's application for asylum, withholding of removal, and relief under the CAT is DENIED.[4]

---

[3] Withholding of removal for threats to an alien's life or freedom requires the applicant to establish that if he is sent back, there is a clear probability that his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. *Bouchikhi*, 676 F.3d at 181.

[4] In this court, Dayo has moved for summary judgment and to expedite the appeal, arguing that the government's brief was submitted late. We have already rejected a motion to strike the brief based on the same allegations. We deny these and any other outstanding motions.