**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SYLVESTER OTIENO OWINO,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 12-71321<br><br>Agency No.<br>A097-469-354<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 11, 2014—Pasadena, California

Filed November 4, 2014

Before: Jerome Farris and Andrew D. Hurwitz, Circuit
Judges, and Paul L. Friedman, District Judge.[*]

Per Curiam Opinion

---

[*] The Honorable Paul L. Friedman, District Judge for the U.S. District
Court for the District of Columbia, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of asylum, withholding of removal and protection under the Convention Against Torture to a citizen of Kenya.

The panel held that the IJ abused her discretion in denying petitioner a continuance to submit into evidence additional arrest documents to prove past persecution because the reasoning was based on legal error and was inconsistent with factors set forth in *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012). As to the nature of the evidence excluded, the panel held that the agency erred as a legal matter in concluding that the arrest warrant was not properly authenticated, as set forth in 8 C.F.R. § 287.6(b), because that regulation provides merely one, and not the only, method for authenticating documents. The panel concluded that the arrest warrant had been properly authenticated by an investigator with the Federal Defenders of San Diego pursuant to Rule 901 of the Federal Rules of Evidence.

Addressing petitioner's contention that a government overseas investigation into the authenticity of certain documents he submitted violated his regulatory right to confidentiality, the panel held that by delivering petitioner's arrest documents directly to Kenyan police officers, the State Department violated 8 C.F.R. § 208.6 under both the plain

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

language of the regulation and as interpreted in DHS guidance.

The panel held that petitioner's argument that admission of evidence from the overseas investigation violated his right to due process was foreclosed by *Angov v. Holder*, 736 F.3d 1263 (9th Cir. 2013).

The panel held that in denying CAT relief the Board failed to justify its rejection of certain evidence. The panel also held that the record did not support the agency's finding of discrepancies in the medical evidence.

The panel remanded for the agency to (1) reconsider whether a continuance should have been granted after evaluating all of the factors set out in *An Na Peng*; (2) determine whether the government's breach of petitioner's right to confidentiality gives rise to a new claim for CAT relief; and (3) reconsider its findings on petitioner's credibility and his original CAT claim in light of all evidence in the record.

**COUNSEL**

Shane H. McKenzie (argued), Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, California, for Petitioner.

Sheri R. Glaser (argued), Stuart F. Delery, and Ernesto H. Molina, Jr., United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

PER CURIAM:

Sylvester Otieno Owino, a native and citizen of Kenya, petitions for review of a decision of the Board of Immigration Appeals. He argues that the agency's adverse credibility finding and denial of relief under the Convention Against Torture are not supported by substantial evidence. He also contends that the agency improperly declined to admit untimely filed evidence, violated his right to confidentiality, and deprived him of due process by admitting evidence of a government authenticity investigation.

We have jurisdiction under 8 U.S.C. § 1252. We grant the petition and remand to the BIA for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Owino was admitted to the United States on a student visa in 1998. In 2003, he was convicted in California of robbery in the second degree. The following year, the Department of Homeland Security ("DHS") initiated removal proceedings. *See* 8 U.S.C. §§ 1101(a)(43)(G), 1227(a)(2)(A)(iii). Owino conceded removability, but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

### A. Owino's Initial Testimony

An immigration judge first held a merits hearing on Owino's application on March 6, 2006. At the hearing, Owino testified to the following:

In the mid-1990s, Owino owned a bicycle repair shop in Jera, Kenya, at which political issues were often discussed. During that time, Owino openly criticized the government, advocated for women's rights, and distributed leaflets on behalf of a women's rights group. In July 1996, he was arrested by the Kenyan police in Jera, detained for ten days, and beaten.

In December 1996, following police interference with his business, he left Jera for Nairobi, where he enrolled in college and joined the track and field team, competing internationally. Owino's success attracted media attention, and, in an interview with the newspaper *The Nation*, he openly criticized the Kenyan police. In October 1997, Owino was arrested again and held for three weeks, during which time he was beaten and told to cease criticizing the government and associating with journalists. The police killed a detainee in his presence and warned that they would kill him, too, if he reported what he had seen; they also planted his fingerprints on a gun, threatening to use it as evidence against him if he said anything.

After being released, Owino was followed by Kamau, one of the police officers who had beaten him. The police also asked Owino's training partner about Owino. After this incident, Owino never left campus and applied to transfer to San Juan United States International University in San Diego, California.

On December 16, 1998, after receiving a student visa, Owino entered the United States. He continued communicating with Kenyan journalists and criticizing the Kenyan police. In 2002, he learned from his former training

partner that Officer Kamau, who had since advanced in rank, had warned that Owino should stay in the United States.

## B. The IJ's Decision and Subsequent Appeals

The IJ issued a decision on April 10, 2006. Because of Owino's robbery conviction, the IJ found him ineligible for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under CAT. The IJ further held that Owino was not credible and had failed to demonstrate entitlement to deferral of removal under CAT.

Owino appealed and also filed a motion seeking remand for the IJ to consider additional evidence of his torture claim. The BIA dismissed Owino's appeal after concluding that, although the IJ's adverse credibility finding was not supported by the record, (1) Owino had not satisfied his burden under CAT of showing that he likely would be tortured if returned to Kenya; (2) the new evidence should have been presented at the original hearing; and (3) Owino failed to show that he could not have presented this evidence initially.

Owino petitioned for review and we granted the petition. *Owino v. Holder*, 575 F.3d 956 (9th Cir. 2009) (per curiam). We noted that the REAL ID Act governed Owino's case, but the agency had not applied it. *Id.* at 958–59. Thus, we "remand[ed] to the IJ on an open record to determine the merits of Owino's application under the REAL ID Act's standards." *Id.* at 959.

## C. Proceedings on Remand

On remand, Owino, represented by new counsel, modified his account of his arrests, now claiming that he had been arrested three times, not twice. Owino testified that the ten-day detention in Jera – which he previously described as having occurred in July 1996 – in fact had taken place in July 1997. Owino claimed that he *had* been arrested in July 1996 in Jera, but that this detention had only lasted for a few days; he claimed that he had not provided details of this short detention during the initial proceedings upon the advice of his attorney. He also stated that he had been arrested in Nairobi in October 1997.

Owino also submitted new documentary evidence in support of his July 1997 arrest. First, he provided medical evidence: notes from Dr. Oketch, who treated him in Jera in July 1997, and a letter from the doctor to Eunice Akinyi, Owino's cousin. Second, Owino submitted three letters that Akinyi had obtained from the Kenyan police: (1) a September 9, 1997 letter from the Bar Ober police post, stating that Owino had been in their custody for 10 days in July 1997, (2) an October 7, 1998 letter from the Kilimani police station in Nairobi, stating that an arrest warrant for Owino was issued in May 1998, and (3) an August 20, 2009 letter from the Bar Ober police post, stating that Owino was required to report to the post. The government, however, submitted a report from a police officer at the Kilimani station denying the authenticity of the letter purportedly from that police station, and email correspondence from an investigator denying the authenticity of the Bar Ober police post letters.

Several other documents were admitted. Owino submitted a letter from one of his contacts in Kenya, Michael Nasubo, who stated that people in Kenya had read a *Daily Journal* article in which Owino discussed his case and that it would be dangerous for him to return to Kenya. The IJ also received in evidence the *Daily Journal* article and reports on conditions in Kenya.

Several witnesses testified. Owino's half-brother, Eric, testified that people in Kenya were aware of the *Daily Journal* article and that the police were still looking for Owino. Two State Department Foreign Service National Investigators testified via phone: Julius Norberts, regarding his investigation of the Kilimani police station letter, and Phineas Machiro, regarding his investigation of the Bar Ober letters.

The IJ was scheduled to issue her decision on September 27, 2011. On September 23, Owino moved to admit a May 1998 warrant for his arrest, from the Narok police station, and supporting declarations. The IJ denied Owino's motion. She also again denied Owino relief under CAT, finding that he was not credible and had failed to show that he likely would be tortured in Kenya.

The BIA dismissed Owino's appeal on April 23, 2012. It affirmed the IJ's denial of Owino's motion to admit additional evidence, reasoning that Owino had failed to explain the delay in submitting the evidence and that the evidence was not properly authenticated. It also affirmed the adverse credibility finding and the denial of CAT relief. Owino again petitioned for review.

## II.  ANALYSIS

### A.  Standard of Review

When the BIA conducts its own review of the evidence and the law, this Court's review "is limited to the BIA's decision, except to the extent the IJ's opinion is expressly adopted." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (quoting *Cordon-Garcia v. INS*, 204 F.3d 985, 990 (9th Cir. 2000)).  Denial of CAT relief is reviewed for substantial evidence, *Sinha v. Holder*, 564 F.3d 1015, 1025 (9th Cir. 2009), as are adverse credibility findings, *Singh v. Holder*, 643 F.3d 1178, 1180 (9th Cir. 2011), and all purely factual determinations, *Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013).   Questions of law are reviewed *de novo*. *Cordoba*, 726 F.3d at 1113.  The denial of a continuance is reviewed for abuse of discretion.  *Cruz Rendon v. Holder*, 603 F.3d 1104, 1109 (9th Cir. 2010).

### B.  Motion for a Continuance to Admit Additional Evidence

Owino first challenges the agency's refusal to consider the arrest documents that he moved to submit on September 23, 2011.  Under the regulations implementing CAT, an IJ must consider "all evidence relevant to the possibility of future torture."  8 C.F.R. § 208.16(c)(3).  At the same time, the regulations vest the IJ with discretion to manage the presentation of evidence, including setting deadlines for the admission of evidence.  *See id.* § 1003.31(c).  If evidence in support of a CAT claim is proffered beyond deadlines prescribed pursuant to section 1003.31(c), an IJ has discretion in deciding whether to consider it.  *See* 8 C.F.R. § 1003.29; *Umezurike v. Holder*, 610 F.3d 997, 1004 (7th Cir. 2010);

*Tang v. United States Att'y Gen.*, 578 F.3d 1270, 1276 (11th Cir. 2009); *Dedji v. Mukasey*, 525 F.3d 187, 191 (2d Cir. 2008); *Singh v. Gonzales*, 495 F.3d 553, 559 n.2 (8th Cir. 2007); *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005).[1]

In determining whether to exercise discretion to grant or deny a continuance, "the IJ – and, on appeal, the BIA – should consider factors including '(1) the nature of the evidence excluded as a result of the denial of the continuance, (2) the reasonableness of the immigrant's conduct, (3) the inconvenience to the court, and (4) the number of continuances previously granted.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1012 (9th Cir. 2009)). The BIA abuses its discretion "when it fails to . . . show proper consideration of all factors when weighing equities and denying relief." *Id.* (quoting *Ahmed*, 569 F.3d at 1014). The agency also abuses its discretion "when it makes an error of law." *Cerezo v. Mukasey*, 512 F.3d 1163, 1166 (9th Cir. 2008).

In denying Owino's motion to admit additional evidence, the IJ did not address each of the *An Na Peng* factors. She simply stated that Owino had failed to explain why he had not provided the documents earlier, and that the warrant did not appear to be properly authenticated. The BIA affirmed on the same grounds. After carefully reviewing the record, we conclude that this denial constitutes an abuse of discretion, as

---

[1] Owino did not formally move for a continuance, but his "Motion to Admit Additional Evidence" past the deadline was the equivalent of such a motion, and the BIA analyzed it as a motion for a continuance.

the agency's reasoning is based on legal error and is inconsistent with the *An Na Peng* factors.

As to the nature of the evidence excluded, the BIA erred as a legal matter in concluding that the arrest warrant was not properly authenticated. In so concluding, the agency relied on 8 C.F.R. § 287.6(b), which provides that an official record of a foreign country may be admitted if it is "evidenced by an official publication thereof, or by a copy attested by an officer so authorized," and is then "certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept." 8 C.F.R. § 287.6(b).

We have held, however, that documents submitted in immigration proceedings "may be authenticated . . . through *any* 'recognized procedure, such as those required by [Immigration and Naturalization Service ("INS")] regulations or by the Federal Rules of Civil Procedure.'" *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam) (quoting *Espinoza v. INS*, 45 F.3d 308, 309–10 (9th Cir. 1995)). "The procedure specified in '8 C.F.R. § 287.6 provides one, but not the exclusive, method.'" *Id*. (quoting *Iran v. INS*, 656 F.2d 469, 472 n.8 (9th Cir. 1981)). Here, the copy of the arrest warrant had been properly authenticated by an investigator with the Federal Defenders of San Diego pursuant to Rule 901 of the Federal Rules of Evidence.

We also find that the agency's statement that Owino failed to explain why he waited to submit this evidence is inconsistent with the record. Owino's counsel informed the IJ that she provided this information in response to the government's contention – made in proceedings between November 2010 and May 2011 – that the previously submitted warrant was not authentic. Although the agency

possibly might have found Owino's explanation wanting, or, in the language of *An Na Peng*, that his conduct was not reasonable, its finding that *no* explanation was given is not supported by the record.

We also note that other *An Na Peng* factors weigh in favor of admission. The warrant evidence is critical to Owino's claim: As the Board itself recognized, evidence of an arrest warrant is "central to the respondent's claim that he will be tortured upon return by the Kenyan police."**[2]** We also note that although the IJ had initially set the deadline for submission of evidence for July 9, 2010, she granted several continuances to the government to present opposing evidence between July 2010 and May 2011. By contrast, it appears that Owino neither sought nor received any continuance during the remand proceedings until he made his request in September 2011.

We remand to the BIA for reconsideration in light of the factors outlined in *An Na Peng* and as discussed above. We do not reach Owino's argument that the denial of a continuance also denied him due process.

### C. Owino's Right to Confidentiality

We next address Owino's claim that the agency violated his right to confidentiality.

The INA does not prohibit the disclosure of information contained in applicants' asylum applications. Mindful,

---

**[2]** Although the IJ found "a consistent pattern of gross, and flagrant violations of human rights by the Kenyan police," she denied relief because Owino failed to show that he would be targeted.

however, that the public disclosure of such information could subject an applicant to retaliatory measures in his country of origin and endanger his relatives still residing abroad, the Attorney General has issued regulations providing that federal officials must, with limited exceptions, maintain in confidence information relating to applicants' asylum applications. *See* 8 C.F.R. § 208.6; U.S. Citizenship and Immigration Servs., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* 2 (June 3, 2005) ("Fact Sheet"), available at http://www.uscis.gov/sites/default/files/USCIS/Laws/ Memoranda/Static_Files_Memoranda/Archives%201998- 2008/2005/fctsheetconf061505.pdf (last visited July 9, 2014). Under 8 C.F.R. § 208.6:

> Information contained in or pertaining to any asylum application . . . shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

8 C.F.R. § 208.6(a).

When State Department investigators at the U.S. Embassy in Nairobi investigated the arrest documents submitted by Owino, they showed these documents to current officers at the Bar Ober and Kilimani police stations. Owino did not consent to this disclosure; none of the exceptions in the regulation applies, *see id.* § 208.6(c); and the government does not argue that the letters were disclosed "at the

discretion of the Attorney General."**³**  Under the plain text of the regulation, Owino argues, his right to confidentiality under 8 C.F.R. § 208.6 was violated.

The government disagrees, asserting that an alien's right to confidentiality is violated only when (1) the government discloses information in violation of 8 C.F.R. § 208.6, *and* (2) "the information disclosed by the government was sufficient to give rise to a reasonable inference that [the alien] had applied for asylum."  *See Lin v. United States Dep't of Justice*, 459 F.3d 255, 264 (2d Cir. 2006).  According to the government, because the Kenyan police would not have inferred that Owino had applied for asylum, the disclosure did not violate Owino's right to confidentiality.  The BIA agreed. We address the government's construction of the regulation before turning to the BIA's findings.

### 1.  8 C.F.R. § 208.6

We defer to the agency's interpretation of its own regulation "if the meaning of the words used is in doubt." *Daubert v. Sullivan*, 905 F.2d 266, 268 (9th Cir. 1990) (quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965)).  The INS first issued guidance on this regulation in a 2001 memorandum addressed to agency personnel.  *See* Memorandum from Bo Cooper, INS General Counsel, to Jeffrey Weiss, INS Director of Int'l Affairs, *Confidentiality of Asylum Applications and Overseas Verification of Documents and Application Information* (June 21, 2001) ("Cooper Memorandum"); *see also Lin*, 459 F.3d at 263

---

**³** 8 C.F.R. § 208.6(c) permits disclosure in limited circumstances to U.S. government officials and contractors, *id*. § 208.6(c)(1), and to federal, state, and local courts in the United States, *id*. § 208.6(c)(2).

(noting that the Cooper Memorandum has been treated "as the general standard for confidentiality"); Fact Sheet (reiterating standards set forth in the Cooper Memorandum).[4]

The Cooper Memorandum specifies that a disclosure will violate the regulation in the following circumstances:

> [C]onfidentiality of an asylum application is breached when information contained therein or pertaining thereto is disclosed to a third party, and the disclosure is of a nature that allows the third party to link the identity of the applicant to: (1) the fact that the applicant has applied for asylum; (2) specific facts or allegations pertaining to the individual asylum claim contained in an

---

[4] Owino has moved for judicial notice of four documents. The first three documents – the Cooper Memorandum and the Fact Sheet referred to in the text above, as well as a letter dated June 15, 2005 from J. Langlois, Director of the Asylum Division, U.S. Citizenship and Immigration Services, to all Asylum Office Directors and Deputy Directors – are official U.S. Citizenship and Immigration Services and INS documents setting out those agencies' interpretation of 8 C.F.R. § 208.6. The government does not question the documents' authenticity, and they are legislative facts: they do not involve the facts of this case, but rather "have relevance to legal reasoning," namely the proposed interpretation of section 208.6. Fed. R. Evid. 201, 1972 advisory committee notes; *Sachs v. Republic of Austria*, 737 F.3d 584, 596 n.10 (9th Cir. 2013). Thus, we may consider them without regard to Rule 201. *See* Fed. R. Evid. 201(a); *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010). The fourth document is an Amnesty International article about conditions in Kenya. This article was published in January 2013, after the BIA's decision in April 2012. The government does not concede that the facts in this article are beyond dispute, and Owino has not so demonstrated. The motion for judicial notice of this document is denied.

asylum application; *or* (3) facts or allegations that are sufficient to give rise to a reasonable inference that the applicant has applied for asylum.

Cooper Memorandum at 3–4 (emphasis added); *see also Lin*, 459 F.3d at 263; Fact Sheet at 3.   Under this standard, confidentiality may be breached even if a disclosure does not give rise to a reasonable inference that the applicant has sought asylum, so long as "the unauthorized disclosure is of a nature that allows the third party to link the identity of the applicant to . . . specific facts or allegations pertaining to the individual asylum claim contained in an asylum application." Fact Sheet at 3.

In discussing this standard, the INS General Counsel noted that overseas investigations of applicants' documents "may present unique difficulties."  Cooper Memorandum at 4.  By way of example, he considered a scenario in which the government wishes to authenticate information contained in an applicant's birth certificate.  In this hypothetical, "the birth certificate could be verified in a number of ways, some of which would breach the confidentiality of the application, while others would not."  *Id*.  Specifically, *if investigators "provide[] the birth certificate directly to foreign government officials for verification of its contents*, *this would be a breach* because the birth certificate discloses both the applicant's identity and information – indeed, an actual document – contained in the asylum application."   *Id*. (emphasis added).[5]

---

[5] As an alternative, the General Counsel suggested, investigators could send the applicant's name to foreign government authorities with a request for birth record information, "if such an inquiry is routinely conducted for

This hypothetical is directly on point here. By delivering Owino's arrest documents directly to Kenyan police officers, the State Department violated 8 C.F.R. § 208.6 under both the plain language of the regulation and as interpreted in DHS guidance.

A violation of the regulation does not necessarily lead to asylum relief, however. Because 8 C.F.R. § 208.6 does not specify any remedy for a breach, we look to the agency's interpretation of the regulation in discerning the proper remedy. *See Averianova v. Mukasey*, 509 F.3d 890, 898 (8th Cir. 2007) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). In its guidance, DHS indicates that disclosure of confidential information may "give rise to a plausible protection claim . . . by bringing an otherwise ineligible claimant to the attention of the government authority or nonstate actor against which the claimant has made allegations of mistreatment." Fact Sheet at 2. In such cases, a breach may give rise to "a new and independent claim for asylum" or related relief. *Averianova*, 509 F.3d at 900; *see also Dayo v. Holder*, 687 F.3d 653, 656–57 (5th Cir. 2012) (A violation of section 208.6 is "not a mere procedural flaw but could subject the asylum-seeker and his family to additional risks . . . . [that could] serve as the basis for an independent claim of asylum or withholding of removal."); *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008) (same). We therefore remand to the agency for consideration of whether the disclosure of

reasons unrelated to an asylum application, such as for an employment application or a visa application." Cooper Memorandum at 5. He reasoned: "Such an inquiry, although it divulges the applicant's identity, does not disclose specific facts or allegations contained in the asylum application, nor does it disclose facts sufficient to give rise to a reasonable inference that the applicant has applied for asylum." *Id*.

Owino's allegations of arrest and detention by the Kenyan police gives rise to a new claim under CAT.[6]

## 2. The BIA's Factual Findings

We next turn to the BIA's determination that the disclosure did not give rise to a reasonable inference that Owino was seeking asylum-related relief in the United States. Owino asserts that this conclusion was not supported by substantial evidence, and we agree.

Prior to the disclosure in 2010, Owino's asylum case had been discussed in a 2009 *Daily Journal* article, and the testimony of Eric Owino and the letter from Michael Nasubo indicated that people in Kenya were aware of the article. In light of this, Kenyan police could have interpreted inquiries by U.S. government investigators about Owino's arrests and warrants as confirmation of the information in the article and reasonably inferred that Owino had applied for asylum on the basis of police abuse.

---

[6] It is possible that the agency conflated the concepts of breach and remedy when it focused on whether the disclosure would indicate that Owino had sought asylum, as a new claim for relief is most likely to arise in the context of retaliation against asylum seekers. *See Lin*, 459 F.3d at 263–64 (focusing on risk that foreign government will retaliate against asylum seekers based on their failed attempts to emigrate); *Averianova*, 509 F.3d at 899–900 (same). Under this theory for relief, a new claim arises only if the disclosure indicates that the applicant was seeking asylum-related relief in the United States. There nevertheless may be situations when the applicant risks persecution based simply on the facts or allegations disclosed, regardless of whether the foreign officials infer that the applicant asserted these facts or allegations in the context of an asylum petition.

The BIA instead concluded, however, that the police would have assumed that the investigators' inquiries related to Owino's employment in the United States, reasoning that "[Owino's] cousin went to the Kenyan police herself to obtain information regarding his arrest record." But in determining that the documents were fraudulent, the agency disbelieved the cousin's account of how she obtained the documents. The agency cannot assume a witness's testimony is false for the purpose of denying relief on one ground, then assume that the same testimony is true for the purpose of denying relief on another.

We find that the BIA erred in concluding that the disclosure did not give rise to a reasonable inference that Owino was seeking asylum in the United States. Accordingly, we direct the agency on remand to determine whether this indication that Owino was seeking asylum-related relief gives rise to a new claim under CAT. *See Dayo*, 687 F.3d at 657; *Anim*, 535 F.3d at 253; *Lin*, 459 F.3d at 267–68.

## D.  Admission of the Overseas Investigation Evidence

Although the rule against hearsay does not apply in removal proceedings, both the INA and the Fifth Amendment's Due Process Clause require that "aliens be given a reasonable opportunity to confront and cross-examine witnesses." *Hernandez–Guadarrama v. Ashcroft*, 394 F.3d 674, 681 (9th Cir. 2005)). The Fifth Amendment also requires that evidence be "probative and its admission [be] fundamentally fair." *Haile v. Holder*, 658 F.3d 1122, 1128 (9th Cir. 2011) (quoting *Espinoza*, 45 F.3d at 310).

Owino asserts that his Fifth Amendment rights were violated by the use of certain investigation evidence that falls short of the standards articulated by our sister circuits. *See Anim*, 535 F.3d at 256–59; *Alexandrov v.Gonzales*, 442 F.3d 395, 404–08 (6th Cir. 2006); *Lin*, 459 F.3d at 268–72. Owino correctly notes that the investigation materials submitted by the government – specifically, the Bar Ober letters and related testimony and the letter from the Nairobi police officer – do not satisfy the standards adopted by these circuits. Subsequent to the briefing in this case, however, a divided panel of this Court issued its decision in *Angov v. Holder*, 736 F.3d 1263 (9th Cir. 2013), expressly declining to follow these other circuits. Owino's due process claim is foreclosed by *Angov*.[7]

In addition, Owino argues that the IJ deprived him of due process by admitting his former attorney's declaration, in which she denied that she had advised him not to disclose his first arrest, without affording him an opportunity to cross-examine her. Owino failed to raise this claim to the BIA. We therefore lack jurisdiction to consider it. *Arsdi v. Holder*, 659 F.3d 925, 928-29 (9th Cir. 2011); *Abebe v. Mukasey*, 554 F.3d 1203, 1208 (9th Cir. 2009) (en banc).

---

[7] We recognize that a petition for rehearing *en banc* in *Angov* is currently pending, and the mandate in that appeal has not yet issued. Because Owino is currently detained and because he may prevail on remand on issues wholly apart from this due process question, we decline to wait for *en banc* activity to conclude in *Angov* to issue this decision. If rehearing is granted, and the *Angov* panel opinion is vacated, the agency should reconsider Owino's due process claim in light of any *en banc* decision that follows.

### E.  The Agency's Inadequate Consideration of the Evidence

An alien seeking CAT relief must show that "it is 'more likely than not' that he or she would be tortured if removed." *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010) (quoting 8 C.F.R. § 1208.16(c)(2)).  In evaluating an applicant's CAT claim, the BIA must consider "all evidence relevant to the possibility of future torture."   8 C.F.R. § 208.16(c)(3); *see Pirir-Boc v. Holder*, 750 F.3d 1077, 1086 (9th Cir. 2014).  Although the BIA "is not required 'to discuss each piece of evidence submitted,'" *Pirir-Boc*, 750 F.3d at 1086 (citation omitted), we have remanded cases where the agency has failed to give reasoned consideration to highly probative or potentially dispositive evidence.  *Id.* at 1085–86. *See also Cole v. Holder*, 659 F.3d 762, 771–73 (9th Cir. 2011) (remanding for consideration of expert testimony, where agency failed to acknowledge one expert witness and its rationale for rejecting another expert's opinion was "entirely unsupported by the record"); *Eneh v. Holder*, 601 F.3d 943, 948 (9th Cir. 2010) (remanding where there was no indication that agency considered documentary and testimonial evidence that prison officials would single out petitioner for mistreatment).  Owino contends that the agency failed to adequately consider several important pieces of evidence in support of Owino's CAT claim, and we agree.

First, Owino submitted two documents from Dr. Oketch: his notes from July 1997 and a letter the doctor wrote to Owino's cousin, Eunice Akinyi.  These documents indicate not only that Owino was injured in July 1997, but also that he reported having been abused by the police and that this explanation was consistent with his injuries.  Although the doctor's letter describes a dislocated wrist, whereas his notes

do not, this difference is not a contradiction, and in fact the documents are generally consistent. Further, although the IJ was suspicious of the July 1997 date of the doctor's notes, it appears that she was confused about the dates of Owino's arrests. The medical documentation evidences Owino's July 1997 arrest and abuse by police, and the agency inadequately explained its decision to discount it.

The agency also inadequately explained its decision to discount the testimony of Eric Owino, Owino's half-brother, who testified to Owino's two arrests in 1997 and the fact that police were still looking for him. The IJ stated that this testimony "deserves little if any weight . . . in light of [Eric's] relationship to Respondent and [his] desire to assist him in his efforts to avoid his removal to Kenya," and that Eric "exaggerated [Owino]'s political activity, asserting events and circumstances that were never testified to by [Owino] himself." An IJ may not refuse to credit testimony merely because of the witness's relationship with the alien and consequent interest in helping him. *Cf. Ladha v. INS*, 215 F.3d 889, 905 n.17 (9th Cir. 2000) (noting that "excluding documents for being 'self-serving' is not a sound practice"), *overruled on other grounds by Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc); *Zolotukhin v. Gonzales*, 417 F.3d 1073, 1075 (9th Cir. 2005) ("Due process principles prohibit an IJ from declining to hear relevant testimony because of a prejudgment about the witness's credibility or the probative value of [the] testimony.") (internal quotation marks omitted). Further, Eric's inclusion of details not set out in Owino's testimony is not an inconsistency; slight differences in the recollection or perception of different witnesses are a common occurrence. The agency also failed to explain its decision to discount the letter from Michael Nasubo.

In denying CAT relief, the agency failed to justify its rejection of evidence indicating that Owino had been arrested previously and is at risk of being arrested again.  We remand to the agency to consider all evidence in support of Owino's claim or to explain its reasons for discounting it.

### F. Owino's Credibility

Finally, Owino challenges the agency's adverse credibility finding.  Under the REAL ID Act, credibility determinations must be made "[c]onsidering the totality of the circumstances[] and all relevant factors."  8 U.S.C. § 1158(b)(1)(B)(iii).   The agency "may consider any inconsistency," though "trivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination."  *Shrestha*, 590 F.3d at 1043–44.  The agency must support its finding with "specific and cogent reasons." *Id.* at 1044 (quoting *Malkandi v. Holder*, 576 F.3d 906, 917 (9th Cir. 2009)).

In affirming the IJ's adverse credibility determination, the BIA relied on Owino's submission of purportedly fraudulent arrest documents and inconsistencies in his arrest dates and medical records.  As discussed above, we do not find that there are any meaningful discrepancies in the medical evidence offered in evidence.  We also note that evidence rejected by the agency may shed light on whether the arrest documents originally submitted were genuine and whether Owino reasonably believed them to be genuine.  *See Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911–12 (9th Cir. 2004) (reversing adverse credibility determination based on the use of one allegedly fraudulent document where nothing in the record suggested that applicant knew that document

was fraudulent).  On remand, the agency should reexamine its credibility analysis in light of all the record evidence.

We also have considered Owino's argument that the evidence compels a positive credibility determination, and find this argument unavailing.  On remand, the agency must revisit the question of Owino's credibility on the basis of the complete and accurate record, but the credibility determination is for the IJ to make in the first instance.  *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1093–96 (9th Cir. 2009).

## III.

We grant the petition for review and remand to the BIA to (1) reconsider whether a continuance should have been granted after evaluating all of the factors set out in *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012); (2) determine whether the government's breach of Owino's right to confidentiality gives rise to a new claim for CAT relief; and (3) reconsider its findings on Owino's credibility and his original CAT claim in light of all evidence in the record.

**PETITION GRANTED; REMANDED.**