RICE, Chief District Judge,
dissenting, concurring with the result of section IV:
Because the BIA failed to consider significant evidence, the Court should grant the petition and remand all three claims. “Within broad limits the law entrusts the agency to make the basic asylum eligibility decision here in question. In such circumstances a ‘judicial judgment cannot be made to do service for an administrative judgment.’ ” INS v. Orlando Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (internal citations omitted) (quoting SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943)). “In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA’s decision cannot be- sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.” Andia v. Ashcroft, 359 F.3d 1181, 1184 (9th Cir. 2004) (citing Orlando Ventura, 537 U.S. at 16-17, 123 S.Ct. 353).[1] Accordingly, unless harmless, when the BIA fails to provide a reasoned explanation or fails to consider evidence, the proper course is to remand to the agency for additional consideration and explanation. See Hu v. Holder, 652 F.3d 1011, 1020 (9th Cir. 2011); Vitug v. Holder, 723 F.3d 1056, 1064 (9th Cir. 2013); Tukhowinich v. INS, 64 F.3d 460, 463 (9th Cir. 1995); Yan Rong Zhao v. Holder, 728 F.3d 1144, 1149 (9th Cir. 2013).[2]
While denying the petition for asylum and withholding of removal, the majority uses the standard for reversal, rather than the standard for remand.[3] Even recognizing the BIA’s glaring mistakes, the majority undertakes a de novo review of the evidence and finds the entire record does not compel a contrary conclusion. That is the test for a reversal, not a remand.[4] If the agency were to properly consider all of the evidence, we cannot “state with confidence that the same decision would be *568 made if we were to remand.”[5] The majority’s skepticism recognizes this doubt. The BIA only considered the overnight detention—but failed to consider the assault against Stepanyan and her husband in 1996, the forcible kidnapping[6], the numerous and serious threats[7], the later assaults against Stepanyan[8] and her husband[9], the ransacking of her. apartment, or the potential, that Stepanyan would be jailed for her letter about the NSS. Remember, the BIA accepted the I J’s finding that she was fully credible. The BIA lightly dismissed the country reports because of an assumed lack of persecution against her co-workers and employer.[10] The evidence not consid *569 ered is highly significant—even without the disputed assault.
Indeed, the record compels the conclusion that—-more likely than not (and certainly at least a ten percent chance[11])— Stepanyan will be persecuted and tortured upon removal.[12] The threats, if carried out, would clearly amount to persecution and torture. Either by death or other nefarious means, making someone disappear’ is definitely persecution and torture. What matters is whether the actor has the “will” and “ability” to carry out the threats. Kaiser v. Ashcroft, 390 F.3d 653, 658-59 (9th Cir. 2004). The NSS’s “will” is evident—they have made good on past threats; and six years after she left, one month before her final hearing, the NSS was still visiting Stepanyan’s home in Armenia asking for her.[13] This allays any hope they have lost interest. The NSS’s “ability” is demonstrated by Stepanyan’s encounters and the country reports documenting flagrant abuses and censorship against journalists by the government. The closing of the news station illustrates such reprisals—the country reports document that stations lose their license for their political speech.

. See also SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947) ("the court is powerless to affirm ... by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.”).

. See also John W. Guendelsberger, Judicial Deference to Agency Decisions in Removal Proceedings in Light of INS v. Ventura, 18 Geo. Immigr. L.J. 605, 639 (2004) ("If the agency’s failure to consider'relevant evidence or due process violations prevented a fair hearing, -a court must remand in order to permit the agency to reconsider the issue after taldng into account the relevant evidence or affording a new hearing to correct due process violations.”).

. In attempting to give deference to the agency, the majority actually takes away the agency's ability to properly decide the case.

. This standard imposes an undue burden on the applicant. Merely because the IJ did not properly review the evidence, the applicant is now tasked with demonstrating she met the burden of proof on a much higher standard where all reasonable inferences are in favor of denying relief.

. See Xiao Ji Chen v. U.S. D.O.J., 471 F.3d 315, 335 (2d Cir. 2006); Palavra v. INS, 287 F.3d 690, 694 (8th Cir. 2002) ("To deport the [applicant] ... is a step of great significance in their [life], They and we deserve a better brand of fact-finding by the BIA before this step can be judicially approved.").

. See fn. 8. The IJ mentioned two men "put her in a vehicle^]", but later states "[t]he only inconvenience it appears that she may have suffered was being held overnight at the police station.”

. Including the threat that her husband would not see her again. Artiga Turcios v. INS, 829 F.2d 720, 724 (9th Cir. 1987) (threat via third party relevant).

. The record compels the conclusion that the NSS was behind the assault against Stepa-nyan; The events leading up to the assault support only one conclusion. The NSS agent first approached her on her walk home from work, asking her to not air news critical of the government. She refused. The next day she was forced into a vehicle by two men on her walk home from work, taken to a local police station, detained overnight, and threatened (you will leave when I decide; we hope you know we can do anything we want to you and no one will find out, and if you don’t want trouble you had better do what we say). She decided she would quit her job, but her employer convinced her to stay by offering to help make it look like she was cooperating. Her feigned allegiance was discovered months later after she authorized a story critical of the government’s interests, An hour after the story aired the NSS agent contacted her. She tried to- deny responsibility, but the agent knew "exactly" that she aired it (there were moles at the station), Stepanyan got bold, telling the agent she was not their puppet and she would do what she thought was right; the agent told her she did not understand nice language and they would speak to her in a different language. Two days later, on her way home from- work, two unidentified assailants punched her in the stomach, slapped her, cursed at her, told her to do vyhat we tell you to do or you will disappear (while holding a knife to her face), but did not tell her to do anything else. According to a medical report, the punch caused internal bleeding.
No other conclusion is reasonable: (1) the assault occurred two days after the NSS said they would speak to her in "different language”; (2) the assault was similar to the previous encounters (on her walk home from work, two unidentified men); (3) the threat she would disappear matches the threat that her husband would not see his wife again; (4) Stepanyan explained why the NSS would act with anonymity ("They couldn’t act openly.”); (5) the country reports recount a pattern of attacks against the media by unidentified assailants; and (6) Stepanyan believed the NSS was behind tire attack—although she said the assailants looked like thieves or hoodlums, she reported that she knew why they were there, wrote a letter to the prosecutor’s office about the attack, left for the United States after the attack out of fear and at the advice of her employer, and is fighting deportation, all while leaving her family behind.

. See Mashiri v. Ashcroft, 383 F.3d 1112, 1120 (2004) (assault on family relevant for eligibility).

. An absence of reported abuses against other employees or her employer is of no import, Lolong v. Gonzales, 484 F.3d 1173, 1178 (9th Cir. 2007) (need only show "individualized risk”), especially given: (1) the widespread abuse of journalists; (2) Stepanyan was the only employee with authority to air news critical of the government; (3) some employees were moles, and employees would not provide information to her out of fear for retaliation; (4) her employer had been visited by the NSS *569 and warned not to air certain material and had political connections protecting him; and (5) the station eventually lost its license.

. INS v. Cardoza-Fonseca, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (for asylum).

. The record also demonstrates Stepanyan suffered past persecution—giving rise to a presumption of future persecution—and further requiring a remand. Mamouzian v. Ashcroft, 390 F.3d 1129, 1134 (9th Cir. 2004); Orlando Ventura, 537 U.S. at 18, 123 S.Ct. 353.

.This is not surprising given she refused, then pretended to cooperate; took a strong stand when discovered; and reported the NSS to the prosecutor’s office and, now, the United States. See Owino v. Holder, 771 F.3d 527, 533 (9th Cir. 2014) (application material is public, giving rise to the possibility of retaliation).