**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 30 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

BOREY AI,

          Petitioner,

   v.

WILLIAM P. BARR, Attorney General,

          Respondent.

No.   18-70032

Agency No. A027-737-360

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 16, 2020
San Francisco, California

Before: WATFORD, FRIEDLAND, and MILLER, Circuit Judges.

    Borey Ai, a native of Thailand and citizen of Cambodia, seeks review of an

order of the Board of Immigration Appeals affirming an immigration judge's

denial of Ai's application for deferral of removal under the Convention Against

Torture. We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we grant the

petition and remand.

    Ai claims that he will be tortured if removed to Cambodia because he is a

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

cultural outsider to Cambodia with a criminal record and family ties to the Khmer Rouge. Before Ai was born, the Khmer Rouge captured Ai's mother, forced her into a labor camp, and killed most of her family. The Khmer Rouge also captured Ai's aunt and conscripted her into the military. Ai's mother fled to Thailand, where he was born. At age five, Ai came to the United States. At age 14, he was convicted of second-degree murder and robbery in a California state court. After serving his sentence, Ai was placed in removal proceedings. He has never set foot in Cambodia.

Ai presented the testimony of Dr. Peg Levine, a clinical psychologist and medical anthropologist with specialized knowledge of Cambodia and the Khmer Rouge regime. Dr. Levine stated that Ai's personal history makes it "probable" that he would be tortured in Cambodia. Specifically, Dr. Levine explained that Ai's criminal record, outsider status, and family ties to the Khmer Rouge would place him at risk of wrongful conviction by the Cambodian government and torture in a Cambodian prison, or of extrajudicial abduction and murder. Dr. Levine concluded that there was a 70 percent chance that the connection between Ai's mother and the Khmer Rouge would be discovered and a 60 to 80 percent chance that Ai would be tortured.

The immigration judge "g[ave] Dr. Levine's risk assessment very limited weight because [Dr. Levine] failed to provide a satisfactory basis for her statistical

conclusion," and "her assessment [was] not based on established principles of statistics, but largely on her own interpretation of soft data." The immigration judge also emphasized that "Dr. Levine is not an expert on the treatment of U.S. deportees to Cambodia or prisoners."

For the same reasons, the Board agreed that Dr. Levine's testimony was "not entitled to great weight." The Board concluded that the remaining evidence was insufficient to establish that it was more likely than not that Ai would be tortured if removed to Cambodia.

We conclude that the Board's rejection of Ai's claim was not supported by substantial evidence because the Board did not adequately consider Dr. Levine's testimony. *See Cole v. Holder*, 659 F.3d 762, 770–73 (9th Cir. 2011); *see also Owino v. Holder*, 771 F.3d 527, 537 (9th Cir. 2014) (Remand is appropriate "where the agency has failed to give reasoned consideration to highly probative or potentially dispositive evidence."). To be sure, the Board was not required to accept Dr. Levine's specific numerical estimates of the risk Ai faced when those estimates did not appear to be based on any quantitative data. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (An "expert's opinion must rest on 'facts or data in the case that the expert has been made aware of or personally observed,' not merely assumptions and speculation." (quoting Fed. R. Evid. 703)). At oral argument, Ai's counsel described the percentages offered by

3

Dr. Levine as "demonstrative number[s]," which we take to be an implicit concession that they were not to be understood as precise measures of probability.

Nevertheless, the Board was required to give "reasoned consideration" to Dr. Levine's entire testimony, and it did not do so. *Cole*, 659 F.3d at 764. Dr. Levine offered more than just probability estimates; she also presented an opinion about the conditions in Cambodia and the dangers Ai would face if deported there. That opinion did not depend on any statistical analysis. Instead, Dr. Levine drew upon her research and direct experience, including more than 1,000 interviews of Cambodian survivors of the Khmer Rouge. Nor did Dr. Levine's opinion that Ai would likely be tortured because he does not speak Khmer, has a criminal record, and has family ties to the Khmer Rouge require specific expertise "on the treatment of U.S. deportees to Cambodia or prisoners."

We express no view on whether there might be other grounds for discounting Dr. Levine's testimony, or whether her testimony, if accepted, requires granting Ai's requested relief. Instead, our review is limited to the reasoning articulated by the Board. *See Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016). Because that reasoning is inadequate to support the Board's conclusion, we remand for the agency to reconsider Ai's application for protection under the Convention Against Torture.

**PETITION GRANTED; REMANDED.**

4